UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JEAN L. JEWETT, LENORE R. OWENS, and LORI L. BUKSAR, on behalf of themselves, individually, and on behalf of all others similarly situated, and on behalf of the FRANCISCAN ALLIANCE, INC. PENSION SECURITY PLAN, | ) ) ) ) ) ) | Civil No. 1:16-cv-4589<br>Honorable Sara L. Ellis |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| FRANCISCAN ALLIANCE, INC., an Indiana Non-profit Corporation; THE RETIREMENT COMMITTEE FOR THE FRANCISCAN ALLIANCE, INC. PENSION SECURITY PLAN; JOHN and JANE DOES 1 - 20, MEMBERS OF THE RETIREMENT COMMITTEE FOR THE FRANCISCAN ALLIANCE, INC. PENSION SECURITY PLAN, each an individual; JOHN and JANE DOES 21 - 40, MEMBERS OF THE BOARD OF TRUSTEES OF FRANCISCAN ALLIANCE, INC., each an individual; and JOHN and JANE DOES 41- 60, each an individual, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **CLAIM OF UNCONSTITUTIONALITY** |
| Defendants. | ) ) | |

## Table of Contents

I. INTRODUCTION ................................................................................................. 1

II. JURISDICTION AND VENUE ........................................................................ 5

III. PARTIES ............................................................................................................. 6

    Plaintiffs ................................................................................................................ 6

    Defendants ............................................................................................................. 7

IV. THE BACKGROUND OF THE CHURCH PLAN EXEMPTION ............... 9

    The Adoption of ERISA ...................................................................................... 9

    The Scope of the Church Plan Exemption in 1974 .......................................... 10

    The Changes to the Church Plan Exemption in 1980 ...................................... 11

V. FRANCISCAN ALLIANCE ............................................................................ 16

    Franciscan Alliance's Operations ..................................................................... 16

    The Franciscan Alliance Pension Security Plan .............................................. 19

        1.     Background ....................................................................................... 19

        2.     The Franciscan Alliance Pension Security Plan Meets the Definition of an ERISA Defined Benefit Plan and a Cash Balance Plan ........................................................................ 23

        3.     Plan Provisions ................................................................................ 24

            a.     Plan Benefits ....................................................................... 24

            b.     Actuarial Equivalent .......................................................... 27

            c.     Vesting Requirements ......................................................... 28

            d.     Optional Forms of Benefit .................................................. 28

            e.     Early Retirement Benefits ................................................... 29

        4.     Defendants Meet the Definition of ERISA Fiduciaries .................. 31

a.       Nature of Fiduciary Status ............................................................ 31

b.       The Plan Explicitly States that Defendants Are Each
ERISA Fiduciaries ...................................................................... 32

VI.     THE FRANCISCAN ALLIANCE PLAN IS NOT A CHURCH PLAN ...................... 35

Only Two Types of Plans May Qualify as Church Plans and the
Franciscan Alliance Pension Security Plan Is Neither Type ............................. 36

Even if the Franciscan Alliance Pension Security Plan Could Otherwise
Qualify as a Church Plan under ERISA §§ 3(33)(A) or (C)(i), it is
Excluded From Church Plan Status under ERISA § 3(33)(B)(ii)...................... 42

Even if the Franciscan Alliance Pension Security Plan Could Otherwise
Qualify as a Church Plan under ERISA, the Church Plan
Exemption, as Claimed By Franciscan Alliance, Violates the
Establishment Clause of the First Amendment of the Constitution,
and is Therefore Void and Ineffective ................................................. 43

VII.    CLASS ALLEGATIONS ................................................................ 44

A.     Numerosity.......................................................................... 45

B.     Commonality........................................................................ 45

C.     Typicality ........................................................................... 45

D.     Adequacy ........................................................................... 46

E.     Rule 23(b)(1) Requirements ....................................................... 46

F.     Rule 23(b)(2) Requirements ....................................................... 47

G.     Rule 23(b)(3) Requirements ....................................................... 47

VIII.   CAUSES OF ACTION ................................................................ 48

COUNT I ................................................................................ 48

(Claim for Equitable Relief Pursuant to ERISA §§ 502(a)(2) and
502(a)(3) Against Defendants Franciscan Alliance; the
Retirement Committee; and John and Jane Does 1-20, the
Retirement Committee Member Defendants)........................................ 48

COUNT II ........................................................................................................ 50

        (Claim for Violation of ERISA § 203 and for Equitable Relief
        Pursuant to ERISA §§ 502(a)(2) and 502(a)(3) Against
        Defendants Franciscan Alliance; the Retirement
        Committee; and John and Jane Does 1-20, the Retirement
        Committee Member Defendants) ....................................................... 50

COUNT III ...................................................................................................... 53

        (Claim for Violation of ERISA § 204(g) and for Equitable Relief
        Pursuant to ERISA §§ 502(a)(2) and 502(a)(3) Against
        Defendants Franciscan Alliance; the Retirement
        Committee; and John and Jane Does 1-20, the Retirement
        Committee Member Defendants) ....................................................... 53

COUNT IV ...................................................................................................... 59

        (Claim for Violation of ERISA § 204(g) and for Equitable Relief
        Pursuant to ERISA §§ 502(a)(2) and 502(a)(3) Against
        Defendants Franciscan Alliance; the Retirement
        Committee; and John and Jane Does 1-20, the Retirement
        Committee Member Defendants) ....................................................... 59

COUNT V ....................................................................................................... 62

        (Claim for Violation of Reporting and Disclosure Provisions
        Against Defendants Retirement Committee; and John and
        Jane Does 1-20, the Retirement Committee Member
        Defendants) ...................................................................................... 62

        1.     Summary Plan Descriptions ................................................... 62

        2.     Annual Reports ...................................................................... 62

        3.     Summary Annual Reports ....................................................... 63

        4.     Notification of Failure to Meet Minimum Funding ................ 63

        5.     Funding Notices ..................................................................... 64

        6.     Pension Benefit Statements .................................................... 64

COUNT VI ...................................................................................................... 65

(Claim for Failure to Provide Minimum Funding Against
      Defendant Franciscan Alliance) ............................................................. 65

COUNT VII ................................................................................................................ 66

(Claim for Failure to Establish the Plan Pursuant to a Written
      Instrument Meeting the Requirements of ERISA § 402
      Against Defendant Franciscan Alliance) ............................................... 66

COUNT VIII ............................................................................................................... 66

(Claim for Failure to Establish a Trust Meeting the Requirements
      of ERISA § 403 Against Defendant Franciscan Alliance) .................... 66

COUNT IX .................................................................................................................. 67

(Claim for Clarification of Benefits Under ERISA §§ 502(a)(1)(B)
      and 502(a)(3) Against Defendant Franciscan Alliance) ........................ 67

COUNT X .................................................................................................................... 68

(Claim for Civil Money Penalty Pursuant to ERISA § 502(a)(1)(A)
      Against Defendants Franciscan Alliance; the Retirement
      Committee; and John and Jane Does 1-20, the Retirement
      Committee Member Defendants) ............................................................ 68

COUNT XI .................................................................................................................. 69

(Claim for Breach of Fiduciary Duty Against All Defendants) ........................ 69

    1.       Breach of the Duty of Prudence and Loyalty ......................................... 69

    2.       Prohibited Transactions ......................................................................... 71

    3.       Failure to Monitor Fiduciaries ............................................................... 72

    4.       Co-Fiduciary Liability ............................................................................ 75

COUNT XII ................................................................................................................ 76

(Claim for Declaratory Relief That the Church Plan Exemption
      Violates the Establishment Clause of the First Amendment
      of the Constitution, and Is Therefore Void and Ineffective) .................. 76

IX.     PRAYER FOR RELIEF ................................................................................... 80

Plaintiffs Jean L. Jewett, Lenore R. Owens, and Lori L. Buksar, individually and on behalf of all participants and beneficiaries of the defined benefit pension plans that are established, maintained, administered and/or sponsored by Franciscan Alliance (or its predecessors or successors), Franciscan Alliance's affiliates and/or by Franciscan Alliance's committees, and operated as or claimed to be "church plans," including the Franciscan Alliance Pension Security Plan[1] (collectively referred to as the "Franciscan Alliance Plan"), by and through their attorneys, hereby allege as follows:

## I.  INTRODUCTION

1.     This case concerns whether Franciscan Alliance properly maintains its pension plan under the Employee Retirement Income Security Act ("ERISA"). The Franciscan Alliance Plan does not meet the definition of a "Church Plan" under ERISA because Franciscan Alliance is not a church or a convention or association of churches and the Franciscan Alliance Plan was not established by a church or a convention or association of churches. *See Stapleton v. Advocate Health Care Network & Subsidiaries*, 817 F.3d 517 (7th Cir. 2016); *Rollins v. Dignity Health,* -- F.3d --, 2016 WL 3997259 (9th Cir. July 26, 2016); *Kaplan v. Saint Peter's Healthcare Sys.*, 810 F.3d 175 (3d Cir. 2015).

2.     Defendant Franciscan Alliance has maintained the Plan in violation of ERISA's protections, to the detriment of over 14,600 employees and former employees who are being harmed in the following ways:

A.     The Plan is significantly underfunded and Defendant Franciscan Alliance continues to fail to fund the Plan in accordance with ERISA, which violates ERISA section 302, 29 U.S.C. § 1082;

---

[1] Previously known as the Sisters of St. Francis Health Services, Inc. Pension Security Plan.

B. The Plan has been unlawfully amended to significantly cut back the accrued benefits of certain groups , including: (1) the Group B participants with at least one but less than five years of service as of December 31, 2013 whose accrued benefits were reduced by a January 1, 2014 amendment; (2) participants who elected pension distributions in certain optional forms (Life with Guaranteed Payments under § 7.03(a) or Joint and Survivor Annuity under §7.03(b))) or as an early retirement benefit under § 5.02 on or after September 1, 2015, received less than they would have received prior to an amendment which reduced the interest rate from 7% to 5.5%; and (3) participants whose accrued benefits earned prior to an amendment changing the definition of "Average Monthly Earnings," were reduced as a result of such amendment; all of which violated ERISA section 204(g), 29 U.S.C. §§ 1054(g).

C. Participants who have worked at least three but less than five years and who accrued benefits for any period from January 1, 1998 through December 31, 2013 are denied retirement benefits entirely in violation of ERISA sections 203(a)(2) and (f)(2), 29 U.S.C. §§ 1053(a)(2) and (f)(2);

D. Participants do not receive notices and other information material to their retirement benefits in violation of ERISA sections 104, 103, 101, 105, 29 U.S.C. §§ 1024, 1023, 1021, 1135.

3. As its name implies, ERISA was crafted to protect employee retirement funds. A comprehensive history of ERISA put it this way:

> Employees should not participate in a pension plan for many years only to lose their pension . . . because their plan did not have the funds to meet its obligations. The major reforms in ERISA—fiduciary standards of conduct, minimum vesting and funding standards, and a government-run insurance program—aimed to

ensure that long-service employees actually received the benefits their retirement plan promised.

James Wooten, THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, at 3 (U. Cal. 2004).

4.       Defendant Franciscan Alliance, Inc. and Affiliates,[2] by and through its subsidiaries and/or affiliates ("Franciscan Alliance" or "Defendant"), operates a healthcare conglomerate in Illinois, Indiana, and Michigan. The Franciscan Alliance Pension Security Plan is a defined benefit pension plan that is established, maintained, administered, and sponsored by Franciscan Alliance.

5.       The Franciscan Alliance Plan does not meet the definition of a Church Plan under ERISA because Franciscan Alliance plainly is not a church or a convention or association of churches and because the Franciscan Alliance Pension Security Plan was not established by a church or a convention or association of churches. That should be the end of the inquiry under ERISA, resulting in a clear finding that the Franciscan Alliance Pension Security Plan is not a Church Plan.  *See Stapleton v. Advocate Health Care Network*, 817 F.3d 517, (7th Cir. 2016); *Rollins v. Dignity Health,* -- F.3d --, 2016 WL 3997259 (9th Cir. July 26, 2016); *Kaplan v. Saint Peter's Healthcare System*, 810 F.3d 175 (3d Cir. 2015).

6.       Franciscan Alliance may claim that it is permitted to establish its own Church Plan under ERISA, even though it is not a church, because it is an organization "controlled by" or "associated with" a church, within the meaning of ERISA. Even if ERISA permitted such non-church entities to establish Church Plans, which it does not, Franciscan Alliance is not controlled by a church, as the evidence will show. Moreover, Franciscan Alliance is not

---

[2] Previously known as the Sisters of St. Francis Health Services, Inc. and renamed Franciscan Alliance, Inc. in November 2010.

associated with a church within the meaning of ERISA because it does not, as ERISA requires, "share common religious bonds and convictions" with a church.

7.     Franciscan Alliance is a non-profit healthcare conglomerate, not unlike other non-profit healthcare conglomerates with which Franciscan Alliance competes in its commercial healthcare activities. Franciscan Alliance is not owned or operated by a church, has never been owned or operated by a church, and does not receive funding from a church. No denominational requirement exists for Franciscan Alliance employees. Indeed, Franciscan Alliance tells prospective employees that any choice of faith, or lack thereof, is not a factor in the recruiting and hiring of Franciscan Alliance employees. In choosing to recruit and hire from the population at large, Franciscan Alliance must also be willing to accept neutral, generally applicable regulations, such as ERISA, imposed to protect those employees' legitimate interests.

8.     If Franciscan Alliance, a non-church organization, could itself establish a Church Plan, which Plaintiff disputes, the Court would be required to evaluate many levels of evidence to determine whether Franciscan Alliance shares common "religious bonds and convictions" with a church.

9.     Moreover, if the Court weighed all this evidence and determined that Franciscan Alliance did share such common religious bonds and convictions with a church, or if for any other reason the Court determined that the Franciscan Alliance Pension Security Plan fell within the scope of the Church Plan exemption, the Church Plan exemption would then be, as applied to Franciscan Alliance, an unconstitutional accommodation under the Establishment Clause of the First Amendment. Franciscan Alliance claims, in effect, that the participants in its defined benefit pension plan must be exempted from ERISA protections, and Franciscan Alliance must be relieved of its ERISA financial obligations, because Franciscan Alliance claims certain

religious beliefs. The Establishment Clause, however, does not allow such an economic preference for Franciscan Alliance and burden-shifting to Franciscan Alliance employees. Extension of the Church Plan exemption to Franciscan Alliance would be unconstitutional under Supreme Court law because it: (A) is not necessary to further the stated purposes of the exemption; (B) harms Franciscan Alliance workers; (C) puts Franciscan Alliance competitors at an economic disadvantage; (D) relieves Franciscan Alliance of no genuine religious burden created by ERISA; and (E) creates more government entanglement with alleged religious beliefs than compliance with ERISA creates.

10.     Franciscan Alliance's claim of Church Plan status for its defined benefit pension plan fails under both ERISA and the First Amendment. Plaintiffs seek an Order requiring Franciscan Alliance to comply with ERISA and afford the Class all of ERISA's protections with respect to Franciscan Alliance's defined benefit pension plan, as well as an Order finding that the Church Plan exemption, as claimed by Franciscan Alliance, is unconstitutional because it violates the Establishment Clause of the First Amendment.

## II.     JURISDICTION AND VENUE

11.     **Subject Matter Jurisdiction.** This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States and pursuant to 29 U.S.C. § 1132(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA.

12.     **Personal Jurisdiction.** This Court has personal jurisdiction over all Defendants because ERISA provides for nationwide service of process. ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2). All of the Defendants are either residents of the United States or subject to service in the United States, and the Court therefore has personal jurisdiction over them. The Court also

has personal jurisdiction over them pursuant to Fed. R. Civ. P. 4(k)(1)(A) because they would all be subject to a court of general jurisdiction in Illinois as a result of Defendant Franciscan Alliance transacting business in, and/or having significant contacts with this District.

13. **Venue.** Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because (a) some or all of the violations of ERISA took place in this District, and/or (b) Defendant Franciscan Alliance may be found in this District through its operation of Franciscan St. James Health – Olympia Fields in Olympia Fields, Illinois and Franciscan St. James Health – Chicago Heights in Chicago Heights, Illinois.

14. Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because Defendant Franciscan Alliance systematically and continuously does business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.

### III. PARTIES

### Plaintiffs

15. **Plaintiff Jean L. Jewett.** Plaintiff Jewett was employed as a switchboard operator and in various clerical positions at St. Anthony Medical Center in Crown Point, Indiana (St. Anthony), which is headquartered in Homewood, Illinois (Cook County), from March 24, 1975 until November 19, 2006. In 1999, St. Anthony was sold to the Sisters of St. Francis Health Services, Inc. In November 2010, the Sisters of St. Francis Health Services, Inc. changed its name to Franciscan Alliance. Plaintiff Jewett is a vested participant in the Franciscan Alliance Pension Security Plan (previously known as the Sisters of St. Francis Health Services, Inc. Pension Security Plan). She is currently receiving a pension benefit under the Plan, in the amount of a monthly benefit of $173.60. Additionally and alternatively, Plaintiff Jewett has a colorable

claim to benefits under a pension plan maintained by Franciscan Alliance and is a participant within the meaning of ERISA section 3(7), 29 U.S.C. § 1002(7), and is therefore entitled to maintain an action with respect to the Plan pursuant to ERISA §§ 502(a)(1)(A) and (B), (a)(2), (a)(3), and (c)(1) and (3), 29 U.S.C. §§ 1132(a)(1)(A) and (B), (a)(2), (a)(3), and (c)(1) and (3).

16. **Plaintiff Lenore R. Owens.** Plaintiff Owens was employed as a medical transcriptionist at St. Anthony from June 9, 1976 until approximately 2000. Plaintiff Owens is a vested participant in the Plan. She is currently receiving a pension benefit under the Plan, in the amount of a monthly benefit of 300.00. Additionally and alternatively, Plaintiff Owens has a colorable claim to benefits under a pension plan maintained by Franciscan Alliance and is a participant within the meaning of ERISA section 3(7), 29 U.S.C. § 1002(7), and is therefore entitled to maintain an action with respect to the Plan pursuant to ERISA §§ 502(a)(1)(A) and (B), (a)(2), (a)(3), and (c)(1) and (3), 29 U.S.C. §§ 1132(a)(1)(A) and (B), (a)(2), (a)(3), and (c)(1) and (3).

17. **Plaintiff Lori L. Buksar.** Plaintiff Buksar has been employed as a nurse at St. Anthony from 1980 until the present. Plaintiff Buksar is a vested participant in the Plan because she is or will become eligible to receive a pension benefit from the Plan. Additionally and alternatively, Plaintiff Buksar has a colorable claim to benefits under a pension plan maintained by Franciscan Alliance and is a participant within the meaning of ERISA section 3(7), 29 U.S.C. § 1002(7), and is therefore entitled to maintain an action with respect to the Plan pursuant to ERISA §§ 502(a)(1)(A) and (B), (a)(2), (a)(3), and (c)(1) and (3), 29 U.S.C. §§ 1132(a)(1)(A) and (B), (a)(2), (a)(3), and (c)(1) and (3).

**Defendants**

18. As discussed below, all the Defendants are ERISA fiduciaries.

19.	**Defendant Franciscan Alliance and Affiliates** ("Franciscan Alliance").

Defendant Franciscan Alliance is a 501(c)(3) non-profit corporation organized under, and

governed by, Indiana law. Prior to November 2010, Franciscan Alliance was known as the

Sisters of St. Francis Health Services, Inc. Franciscan Alliance has its corporate office in

Mishawaka, Indiana. Franciscan Alliance operates in Illinois, Indiana, and Michigan, and

includes 14 health center campuses, 72 primary care clinic sites, 81 specialty care clinic sites,

and numerous home care services organizations.  Franciscan Alliance also includes various

accountable care organizations and physician hospital managed care networks, a non-profit

foundation, and a number of support related divisions and affiliates including a corporate office,

a consolidated information technology services division, back office/management support

organizations, a construction company, and a captive insurance company. For its fiscal year

ending December 31, 2015, Franciscan Alliance had total operating revenue of $2.7 billion and

total assets of $4.6 billion. Franciscan Alliance employs more than 14,600 people. Franciscan

Alliance is the sponsor of the Plan within the meaning of ERISA § 3(16)(B), 29 U.S.C.

§ 1002(16)(B).

20.	**Defendant Retirement Committee for the Franciscan Alliance Pension**

**Security Plan and Defendants John and Jane Does, 1-20, Members of Defendant**

**Retirement Committee for the Franciscan Alliance Pension Security Plan** (the "Retirement

Committee"). Defendant Retirement Committee is designated as the "Plan Administrator" of the

Franciscan Alliance Pension Security Plan by the terms of the instrument under which the Plan is

operated, and within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A). The

Retirement Committee consists of not less than three persons. The Retirement Committee

Defendants are also fiduciaries of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

21.     **Defendants John and Jane Does, 21-40, Members of the Board of Trustees of Franciscan Alliance** (the "Board"). The members of the Board of Trustees of Franciscan Alliance have the right to remove any member of the Retirement Committee, which is the Plan Administrator.  The Board also has the power to appoint members of the Retirement Committee to fill a vacancy.  As such, the Board Defendants are fiduciaries of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

22.     **Defendants John and Jane Does 41-60**. Defendants John and Jane Does 41-60 are individuals who, through discovery, are found to have fiduciary responsibilities with respect to the Plan and are fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). These individuals will be added by their true names as Defendants in this action upon motion by Plaintiffs at an appropriate time.

23.     Defendant Members of the Retirement Committee, Members of the Board of Trustees of Franciscan Alliance, and John and Jane Does 41-60 are collectively referred to herein as the "Individual Defendants."

## IV.     THE BACKGROUND OF THE CHURCH PLAN EXEMPTION

### The Adoption of ERISA

24.     Following years of study and debate, and broad bipartisan support, Congress adopted ERISA in 1974, and the statute was signed into law by President Ford on Labor Day of that year. Among the factors that led to the enactment of ERISA were the widely publicized failures of certain defined benefit pension plans, especially the plan for employees of Studebaker Corporation, an automobile manufacturing company, which defaulted on its pension obligations

in 1965. *See generally* John Langbein, *et al.*, PENSION AND EMPLOYEE BENEFIT LAW 78-83 (2010) ("The Studebaker Incident").

25.     As originally adopted in 1974, and today, ERISA protects the retirement savings of pension plan participants in a variety of ways. As to participants in traditional defined benefit pension plans, such as the Plan at issue here, ERISA mandates, among other things, that such plans be currently funded and actuarially sound, that participants' accruing benefits vest pursuant to certain defined schedules, that the administrators of the plan report certain information to participants and to government regulators, that the fiduciary duties of prudence, diversification, loyalty, and so on apply to those who manage the plans, and that the benefits promised by the plans be guaranteed, up to certain limits, by the Pension Benefit Guaranty Corporation. *See, e.g.*, ERISA §§ 303, 203, 101-106, 404-406, 409, 4007, 4022, 29 U.S.C. §§ 1083, 1053, 1021-1026, 1104-1106, 1109, 1307, 1322.

26.     ERISA centers on pension plans, particularly defined benefit pension plans, as is reflected in the very title of the Act, which addresses "retirement income security." However, ERISA also subjects to federal regulation defined contribution pension plans (such as 401(k) plans) and welfare plans, which provide health care, disability, severance and related non-retirement benefits. ERISA §§ 3(34) and (1), 29 U.S.C. §§ 1002(34) and (1).

### The Scope of the Church Plan Exemption in 1974

27.     As adopted in 1974, ERISA provided an exemption from compliance for certain plans, in particular governmental plans and Church Plans. Plans that met the statutory definitions were exempt from all of ERISA's substantive protections for participants. ERISA § 4(b)(2), 29 U.S.C. § 1003(b)(2) (exemption from Title I of ERISA); ERISA § 4021(b)(3), 29 U.S.C. § 1321(b)(3) (exemption from Title IV of ERISA).

28.     ERISA defined a Church Plan as a plan "established and maintained for its employees by a church or by a convention or associations of churches."[3]

29.     Under the 1974 legislation, although a Church Plan was required to be established and maintained by a church, it could also include employees of certain pre-existing agencies of such church, but only until 1982. ERISA § 3(33)(C) (1974), 29 U.S.C. § 1002(33)(C) (1974) (current version as amended at 29 U.S.C. § 1002(33) (West 2013)). Thus, under the 1974 legislation, a pension plan that was not established and maintained by a church could not be a Church Plan. *Id*.

### The Changes to the Church Plan Exemption in 1980

30.     Church groups had two major concerns about the definition of "Church Plans" in ERISA as adopted in 1974. The first, and far more important, concern was that Church Plans after 1982 could not include the lay employees of agencies of a church. The second concern that arose in the church community after 1974 was more technical. Under the 1974 statute, all Church Plans, single-employer or multiemployer, had to be "established and maintained" by a church or a convention/association of churches. This ignored the role of the churches' financial services organizations in the day-to-day management of the pension plans. In other words, although Church Plans were "established" by a church, in practice they were often "maintained" and/or "administered" by a separate financial services organization of the church, usually incorporated and typically called a church "pension board."

31.     These two concerns ultimately were addressed when ERISA was amended in 1980 in various respects, including a change in the definition of "Church Plan." Multiemployer

---

tles. For example, the essentially identical definition of Church Plan in the Internal Revenue Code is found at 26 U.S.C. § 414(e).

Pension Plan Amendments Act of 1980 ("MPPAA"), P.L. No. 96-364. The amended definition is current law.

32.    As to the first concern (regarding lay employees of agencies of a church), Congress included a new definition of "employee" in subsection (C)(ii)(II) of section 3(33) of ERISA. 29 U.S.C. § 1002(33)(C)(ii)(II) (1980) (current version at 29 U.S.C. § 1002(33)(C)(ii)(II) (West 2013)). As amended, an "employee" of a church or a convention/association of churches includes an employee of an organization "which is controlled by or associated with a church or a convention or association of churches." *Id.* The phrase "associated with" is then defined in ERISA § 3(33)(C)(iv) to include only those organizations that "share[] common religious bonds and convictions with that church or convention or association of churches." 29 U.S.C. § 1002(33)(C)(iv) (1980) (current version at 29 U.S.C. § 1002(33)(C)(iv) (West 2013)). Although this new definition of "employee" permitted a "Church Plan" to include among its participants employees of organizations controlled by or associated with the church, convention, or association of churches, it remains the case that a plan covering such "employees" cannot qualify as a "Church Plan" unless it was "established by" the church, convention, or association of churches. ERISA § 3(33)(A), 29 U.S.C. § 1002(33)(A) (West 2013).

33.    Three appellate cases have recently concluded that the statutory language in ERISA § 3(33)(A), 29 U.S.C. § 1002(33)(A) is clear—only a church can establish a church plan, that the legislative history underscores this conclusion and that any agency decisions that reach a different conclusion—private letter rulings obtained without input from plan participants—are entitled to no deference. *See Stapleton v. Advocate Health Care Network*, 817 F.3d 517, 2016 WL 1055784 (7th Cir. Mar. 17, 2016); *Rollins v. Dignity Health,* -- F.3d --, 2016 WL 3997259

(9th Cir. July 26, 2016); *Kaplan v. Saint Peter's Healthcare System*, 810 F.3d 175 (3d Cir. 2015).

34.     As to the second concern (regarding plans "maintained by" a separate church pension board), the 1980 amendments spoke to the issue as follows:

> A plan established and maintained for its employees (or their beneficiaries) by a church or by a convention or association of churches includes a plan maintained by an organization, whether a civil law corporation or otherwise, *the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits*, or both, for the employees of a church or a convention or association of churches, if such organization is controlled by or associated with a church or a convention or association of churches.

ERISA § 3(33)(C)(i) (1980), 29 U.S.C. § 1002(33)(C)(i) (1980) (emphasis added) (current version at 29 U.S.C. § 1002(33)(C)(i) (West 2013)). Accordingly, under this provision, a plan "established" by a church or by a convention or association of churches could retain its "Church Plan" status even if the plan was "maintained by" a distinct organization, so long as (1) "the principal purpose or function of [the organization] is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits" and (2) the organization is "controlled by or associated with" the church or convention or association of churches. *Id*.

35.     This church "pension board" clarification, however, has no bearing on plans that were not "established" by a church or by a convention or association of churches. Thus, a plan "established" by an organization "controlled by or associated with" a church is ***not*** a "Church Plan" because it was not "established" by a church or by a convention or association of churches. *See Stapleton*, 817--- F.3d at 523 (7th Cir. 2016)---, 2016 WL 1055784 at *11 (7th Cir. Mar. 17, 2016) ("[T]he plain language of (33)(C) merely adds an alternative meaning to one of the subsection (33)(A)'s two elements—"maintain" element—but does not change the fact that a

plan must still be established by a church."); *Rollins*, -- F.3d --, 2016 WL 3997259 at *__ (9th

Cir. July 26, 2016) ("We conclude that the more natural reading of subparagraph (C)(i) is that the

phrase preceded by the word 'includes' serves only to broaden the definition of organizations

that may maintain a church plan. The phrase does not eliminate the requirement that a church

plan must be established by a church."); *Kaplan*, 810 F.3d at 183 (3d Cir. 2015) ("The plain

terms of ERISA only make these exemptions available to plans established in the first instance

by churches.").

36.     In the alternative, this "pension board" clarification has no bearing on plans that

were not "maintained" by a church pension board. Thus, even if a plan were "established" by a

church, and even if it were "maintained by" an organization "controlled by or associated with" a

church, such as a school, hospital, or publishing company, it still would not be a "Church Plan"

if the principal purpose of the organization was other than the administration or funding of the

plan. In such plans, the plan is "maintained" by the school, hospital or publishing company, and

usually through the human resources department of such entity. It is not maintained by a church

pension board:  No "organization, whether a civil law corporation or otherwise, the principal

purpose or function of which is the administration or funding of a plan or program for the

provision of retirement benefits" maintains the plan. *Compare with* ERISA § 3(33)(C)(i), 29

U.S.C. § 1002(33)(C)(i) (1980) (current version at 29 U.S.C. § 1002(33)(C)(i) (West 2013)).

37.     The requirements for Church Plan status under ERISA, both as originally adopted

in 1974 and as amended in 1980, are, as explained above, very clear. To meet the definition of

ERISA's "narrow" church plan exemption, the Plan must be established and maintained by a

church. And there is no tension between the legislative history of the 1980 amendment and the

amendment itself:  Congress enacted exactly what it wanted to enact. Fundamental to the

scheme, both as originally adopted and as fine-tuned in 1980, was that neither an "affiliate" of a church (using the 1974 language) nor "an organization controlled by or associated with" a church (using the 1980 language) could itself establish a Church Plan. Its employees could be *included* in a Church Plan, but if it sponsored its own plan, that was not a Church Plan. With respect to "pension boards," the 1980 legislation simply clarified the long standing practice that churches could use their own financial organizations to manage their Church Plans.

38.     Unfortunately, in 1983, in response to a request for a private ruling, the Internal Revenue Service ("IRS") issued a short General Counsel Memorandum that misunderstood the statutory framework. The author incorrectly relied on the "pension board" clarification to conclude that a non-church entity could sponsor its own Church Plan as long as the plan was managed by some "organization" that was controlled by or associated with a Church. This, of course, is not what the statute says, nor what Congress intended. In any event, this mistake was then repeated, often in verbatim language, in subsequent IRS determinations and, after 1990, in Department of Labor determinations. Under the relevant law, these private rulings may only be relied upon by the parties thereto, within the narrow confines of the specific facts then disclosed to the agencies, and are not binding on this Court in any event. Moreover, the IRS and DOL interpretations of the statutory framework, as expressed in these private rulings, are not entitled to judicial deference because the rulings are conclusory, inconsistent, and lack meaningful analysis.  *See Stapleton*, 817--- F.3d at 531 ---, 2016 WL 1055784 at *12 (7th Cir. Mar. 17, 2016) ("[T]he IRS letter rulings are not persuasive and we owe them no deference"); *Rollins*, -- F.3d --, 2016 WL 3997259 at *7 (9th Cir. July 26, 2016) (agreeing with the Third and Seventh Circuits that the IRS interpretation is not entitled to deference because it is "unpersuasive,"

"based on an obvious misreading of the statutory text," and "ignores the relevant legislative history")..

## V.    FRANCISCAN ALLIANCE

### Franciscan Alliance's Operations

39.    Effective July 1, 2015, upon determining that "it needed a new operational structure that enhanced and better coordinated its service delivery components," Franciscan Alliance implemented a new organizational structure intended to "eliminate clinical variation, to promote the implementation of best practices, and to achieve the 'triple aim' of providing better care and better health at lower costs." The new organizational structure includes four clinical service areas: Ambulatory Services and Franciscan Physician Network, Acute Care Services, Post-Acute Services, and Accountable Care Organization Services. According to Franciscan Alliance, "]t]hese overarching clinical service areas overlay the traditional Market structure and are woven in a matrix management reporting system." The system-wide accountability and reporting structure is intended to, among other things, replicate cost savings throughout the System.

40.    Franciscan Alliance employs more than 14,600 people across Illinois, Indiana, and Michigan. Its corporate offices are located in Mishawaka, Indiana.

41.    For its fiscal year ending December 31, 2015, Franciscan Alliance had total operating revenue of $2.7 billion and total assets of $4.6 billion.

42.    In addition to its hospital network, Franciscan Alliance has branched out to include numerous subsidiaries and/or related entities, including for-profit corporations.

43.    For example, Franciscan Alliance owns the Hills Insurance Company, Ltd., a for-profit captive insurance subsidiary.

44.    Franciscan Alliance owns Franciscan Holding Corporation, a for-profit business management corporation.

45.    Franciscan Alliance also has ownership interests in Advantage Health Solutions, a for-profit health insurance plan with more than 50,000 beneficiaries as of October 31, 2015, and Alverno Clinical Laboratories, LLC, an Indiana company created to direct, operate, maintain and manage a centralized clinical laboratory.

46.    Like other large non-profit hospital systems, Franciscan Alliance relies upon revenue bonds to raise money, and it has significant sums invested in, among other things, fixed-income securities, equity securities, and hedge funds.

47.    The principle purpose or function of Franciscan Alliance is not the administration or funding of a plan or program for the provision of retirement or welfare benefits, or both, for the employees of a church or a convention or association of churches.

48.    The management of Franciscan Alliance is comprised primarily of lay people, and Executive Officers of Franciscan Alliance receive compensation in line with executive officers of other hospital systems. For example, in 2013, the Franciscan Alliance President and Chief Executive Officer received reportable compensation of approximately $1.6 million and other compensation of over $480,000.

49.    Franciscan Alliance is not a church.

50.    Franciscan Alliance has never been a church.

51.    Franciscan Alliance is not a convention or association of churches.

52.    Franciscan Alliance has never been a convention or association of churches.

53. Franciscan Alliance annually files or filed with the IRS a Form 990 or 990-EZ, Return of Organization Exempt from Income Tax. These forms were submitted to the IRS under penalty of perjury.

54. Schedule A to Form 990 and Form 990-EZ requires the filing organization to declare the reason for its public charity status. The first option for claiming public charity status is that the organization is "[a] church, convention of churches, or association of churches . . . ."

55. Year after year, including in their most recent Form 990 filings, Franciscan Alliance did not check the box on Schedule A to claim status as "[a] church, convention of churches, or association of churches . . . ."

56. On information and belief, Franciscan Alliance claims some affiliation with the Catholic Church and with the Sisters of St. Francis of Perpetual Adoration.

57. However, Franciscan Alliance is not owned by the Catholic Church, or any other church.

58. Franciscan Alliance does not receive funding from the Catholic Church, or any other church.

59. Franciscan Alliance does not claim that the Catholic Church, or any other church, has any liability for Franciscan Alliance's debts or obligations.

60. No church directs Franciscan Alliance on how it should or must allocate its resources.

61. No church approves Franciscan Alliance's financial transactions.

62. Neither the Catholic Church, nor any other church has any role in the governance of Franciscan Alliance.

63. Franciscan Alliance acts by and through its Board of Directors.

64.     No church elects the members of Franciscan Alliance's Board of Directors.

65.     Neither the Catholic Church, nor any other church has any role in the maintenance and/or administration of the Franciscan Alliance Plan.

66.     Franciscan Alliance specifically chooses not to impose any denominational requirement on its employees.

67.     Franciscan Alliance has no denominational requirement for its patients and/or clients.

68.     Franciscan Alliance complies with ERISA for one of its defined benefit pension plans, the Greater Lafayette Health Services Inc. Pension Security Plan. ("Greater Lafayette ERISA Plan").

69.      Franciscan Alliance purports to disclose, and not keep confidential, its own highly complex financial records. For example, Franciscan Alliance is required and, in some cases, has voluntarily elected to comply with a broad array of elaborate state and federal regulations and reporting requirements, including Medicare and Medicaid. In addition, Franciscan Alliance makes public its consolidated financial statements, which describe Franciscan Alliance's representations as to its own highly complex operations and financial affairs. Finally, Franciscan Alliance's financial information is regularly disclosed to the rating agencies and the public when tax-exempt revenue bonds are issued.

### The Franciscan Alliance Pension Security Plan

### Background

70.     The Franciscan Alliance Pension Security Plan is a qualified, noncontributory defined benefit pension plan that covers all eligible employees of certain of Franciscan

Alliance's entities and provides defined benefits based on years of service and final average salary.

71.     Franciscan Alliance adopted, and therefore established, the Plan that was previously known as the Sisters of St. Francis Services, Inc. Pension Security Plan, effective January 1, 1998.

72.     Prior to January 1, 1998, there were eight (8) plans that merged together to form a new Plan, the Franciscan Alliance Pension Security Plan, effective January 1, 1998:  St. Anthony Hospital (Louisville) Non-Bargaining Unit Employees Retirement Plan; St. Anthony Hospital (Michigan City) Amended Employees Retirement Plan; St. Elizabeth Hospital (Lafayette) Amended Employees Retirement Plan; Saint Francis Hospital Center Pension Plan, Beech Grove, Indiana; St. James Hospital and Health Centers (Chicago Heights) Amended Employees Retirement Plan; St. Joseph Hospital Pension Plan; St. Margaret Mercy Healthcare Centers, Inc. Amended Employees Retirement Plan; and Sisters of St. Francis Health Services, Inc. Corporate Office and Alverno Administrative Services, Inc. Employees Retirement Plan.

73.     Effective January 1, 1998 Franciscan Alliance became the Plan Sponsor of the Franciscan Alliance Pension Security Plan.

74.     The Franciscan Alliance Pension Security Plan was not established by a church, or convention or association of churches.

75.     Franciscan Alliance established the Plan.

76.     From at least January 1, 1998 to the present, Franciscan Alliance has maintained the Franciscan Alliance Pension Security Plan.

77.     From at least January 1, 1998 to the present, Franciscan Alliance has had the power to continue the Franciscan Alliance Pension Security Plan.

78.     From at least January 1, 1998 to the present, Franciscan Alliance has had the power amend the Franciscan Alliance Pension Security Plan.

79.     From at least January 1, 1998 to the present, Franciscan Alliance has had the power to terminate the Franciscan Alliance Pension Security Plan.

80.     Franciscan Alliance sponsors the Franciscan Alliance Pension Security Plan.

81.     Franciscan Alliance is responsible for funding the Franciscan Alliance Pension Security Plan.

82.     From at least January 1, 1998 to the present, Franciscan Alliance has been responsible for appointing a Plan Administrator for the Franciscan Alliance Pension Security Plan and Franciscan Alliance's Board of Trustees had the right to remove members of the committee that acted as the Plan Administrator and fill by appointment any vacancy in the membership of the committee.

83.     Franciscan Alliance currently maintains the Franciscan Alliance Pension Security Plan.

84.     No church has the power to continue, amend, or terminate the Franciscan Alliance Pension Security Plan.

85.     No church (or convention or association of churches) has any role in the administration of the Franciscan Alliance Pension Security Plan.

86.     No church (or convention or association of churches) sponsors, funds, or possesses the authority to amend or terminate the Franciscan Alliance Pension Security Plan.

87.     The Plan was amended and restated in its entirety, effective January 1, 2002, with amendments through December 31, 2009.

88.     Effective January 1, 2011, the name of the Plan was changed by amendment to Franciscan Alliance, Inc. Pension Security Plan to reflect the name change of Franciscan Alliance.

89.     The Plan was amended and restated again effective January 1, 2014 ("2014 Restatement") for the purposes of incorporating previously adopted amendments, freezing the Security Account effective December 31, 2013, and implementing different benefit formulas and early retirement reduction factors for certain participants who were employed after December 31, 2013.

90.     Effective September 1, 2015, the Plan was frozen to new employees.

91.     According to Franciscan Alliance, the funding policy for the Plan is to fund the normal service cost based on a long-term funding liability for the Plan's year and amortize any under or over funding over a ten year period. The funding policy is reviewed annually and adjusted as needed.

92.     According to § 8.01 of the 2014 Restatement of the Plan, however, "nothing contained in [the] Plan or the Trust Agreement is intended to require the Employer to make contributions under [the] Plan and the Employer assumes no legal obligation to contribute to [the] Plan."

93.     The Plan was underfunded by $428,141,000 in 2012. During a town hall meeting in 2012, Gene Diamond, Franciscan CEO at the time, told participants "the Franciscan Alliance pension is well-funded, is strong, is being carefully monitored, and we feel comfortable that it is secure."

94.     Based on Franciscan Alliance's most recently published financial statements, the Plan is currently underfunded by at least $320,596,000.

95.     Because the Plan is operated pursuant to the Plan documents, it unlawfully incorporates plan amendments that do not comply with ERISA and cut back participants' accrued benefits. The Plan also unlawfully denies participants who accrued benefits for any period from January 1, 1998 through December 31, 2013 and who completed at least three years of Service benefits altogether. Therefore, the Plan is actually more underfunded than reported in Franciscan Alliance's financial statements.

96.     Franciscan Alliance claims that the Plan has church plan status as defined in ERISA.

**The Franciscan Alliance Pension Security Plan Meets the Definition of an ERISA Defined Benefit Plan and a Cash Balance Plan**

97.     The Franciscan Alliance Pension Security Plan is a plan, fund, or program that was established and maintained by Franciscan Alliance and which, by its express terms and surrounding circumstances, provides retirement income to employees and/or results in the deferral of income by employees to the termination of their employment or beyond. As such, the Franciscan Alliance Pension Security Plan meets the definition of an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A).

98.     The Franciscan Alliance Pension Security Plan does not provide for an individual account for each participant and does not provide benefits based solely upon the amount contributed to a participant's account. As such, the Franciscan Alliance Pension Security Plan is a defined benefit plan within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35), and is not an individual account plan or "defined contribution plan" within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34).

99. Effective January 1, 1998 through December 31, 2013, the Franciscan Alliance Pension Security Plan offered a "Security Account" to all employees who were Plan participants. As described in further detail below, benefits under the Security Account are computed by reference to hypothetical account balances or equivalent amounts. As such, the Franciscan Alliance Pension Security Plan is also a "statutory hybrid plan" (i.e., a cash balance plan) because it is a defined benefit plan under which the accrued benefit (or any portion thereof) of a participant is calculated as the balance of a hypothetical account maintained for the participant or as an accumulated percentage of the participant's final average compensation. 26 U.S.C. § 411(a)(13)(C)(i).

## Plan Provisions

### a. Plan Benefits

100. The 2014 Restatement of the Plan defines a participant's accrued retirement benefit as "[t]he portion of the benefit derived from Employer contributions and payable, in the normal form described in Section 7.01, at a participant's Normal Retirement Date that the participant earned as of the date of calculation." 2014 Restatement § 1.02. The normal form of benefit "is a series of monthly payments beginning on the participant's Retirement Date and ending with the month he dies." 2014 Restatement § 7.01.

101. A participant's accrued retirement benefit is calculated by applying the formulas described in § 5.01 of the Plan, which are based on the participant's average monthly earnings, service, and the value of her Security Account as of the date of calculation. 2014 Restatement § 1.02.

102. The 2014 Restatement defines the Security Account as a "book entry account (not an actual account established under the trust) that is established for each person which is a

Participant (other than a Group B Participant) after December 31, 1997." 2014 Restatement § 1.30, as amended by Amendment Number 5. "A Participant's Security Account will equal his initial Security Account balance increased by applicable Compensation and Interest Credits." 2014 Restatement § 1.30. The "Compensation Credit" is equal to two percent (2%) of a participant's monthly earnings for the preceding Plan Year." 2014 Restatement §§ 1.23, 1.30(b). The "Interest Credit" is equal to the product of (i) the Participant's Security Account balance, calculated as of the first day of the Plan Year (*i.e.*, before allocation of the "Compensation Credit" for that year) and (ii) the average return on 30-year Treasury Bonds for the November preceding the start of the Plan Year. 2014 Restatement § 1.30(c). The Security Account was frozen as of December 31, 2013.

103.    Some participants in the Plan also have a "Contribution Account" defined as "[t]he bookkeeping account comprised of the Participant's mandatory contributions under any plan that is merged into this Plan effective December 31, 1997, plus Credited Interest . . . at the rate of five percent (5%) compounded annually on the balance of each Participant's Contribution Account." 2014 Restatement §§ 1.13, 1.14. A Participant is entitled to an immediate distribution of her Contribution Account upon termination, or may elect to receive monthly benefits equal to her Accrued Pension Derived From Employee Contributions beginning as of his Normal Retirement Date or a reduced benefit as of any Early Retirement Date. 2014 Restatement § 4.08

104.    To determine a participant's accrued retirement benefit, the 2014 Restatement provides different benefit formulas for participants who were employees on December 31, 2013 and were fully vested in their accrued retirement benefit as of that date ("Group A"),[4] and for

---

[4] Amendment 5 to the 2014 Restatement amended Group A to be called Track 1 and Group B to be called Track 2.

participants where were employees on December 31, 2013 but not fully vested or who began working on or after January 1, 2014 ("Group B"). 2014 Restatement § 1.24.

105. A Group A Participant who terminates on or after her Normal Retirement Date is entitled to a normal retirement benefit that is equal to the largest of four formulas, minus any accrued benefit under the Greater Lafayette ERISA Plan. The formulas are: (a) 1% of Average Monthly Earnings multiplied by Service, plus 1.5% of Average Monthly Earnings above the taxable wage base under Section 230 of the Social Security Act multiplied by Service; (b) $40.00 multiplied by Service (but not more than ten years of Service); (c) the actuarial equivalent of her Security Account, determined by applying the mortality table contained in Section 1.04(b) and the average return on 30-Year Treasury Bonds for the November preceding the start of the Plan year containing the Participant's Normal or Late Retirement Date; or (d) for members of the Franciscan Alliance Operations Committee, 3.125% or 4% of Average Monthly Earnings multiplied by Service (but not more than 25 years of service). 2014 Restatement § 5.01.

106. A Group B Participant who terminates employment on or after her Normal Retirement Date is entitled to receive a benefit equal to the largest of: (a) (i) 0.5% of Average Monthly Earnings multiplied by Service; plus, (ii) 0.75% of Average Monthly Earnings above the taxable wage base under Section 230 of the Social Security Act multiplied by Service; (b) $20.00 multiplied by Service (but not more than ten (10) years of Service); or (c) for members of the Franciscan Alliance Operations Committee, 3.125% or 4% of Average Monthly Earnings multiplied by Service (but not more than 25 years of Service). 2014 Restatement § 5.01.

107. An employee terminating on or after January 1, 2004 but before January 1, 2014 will have her benefits calculated based on her highest average monthly earnings during the five

(5) consecutive, complete calendar years before her Retirement Date or the date she terminates employment. 2014 Restatement § 1.06.

108.    An employee terminating on or after January 1, 2014 will have her benefits calculated based on her highest average monthly earnings during the seven (7) consecutive, complete calendar years before her Retirement Date or the date she terminates employment. 2014 Restatement § 1.06.

### b.    Actuarial Equivalent

109.    The 2014 Restatement defines "Actuarial Equivalent" to mean "[t]he equivalent value of the normal form of payment described in Section 7.01 when it is converted to an optional payment form or paid at a date other than the Participant's Normal Retirement Date. This comparison will be made by applying the RP-2014 Combined No Collar Mortality Table, projected to 2025 (weighted 85% Female/15% Male for [a] Participant, 15% Female/85% Male for a beneficiary) and five and one-half percent (5.5%) interest, compounded annually." 2014 Restatement § 1.03, as amended by Amendment 5.

110.    Amendment 5 changed the definition of "Actuarial Equivalent" in § 1.03 of the 2014 Restatement to reduce the interest rate used to convert the normal form of payment to an optional form of payment from 7% to 5.5%, effective September 1, 2015.

111.    This definition of "Actuarial Equivalent" applies to calculating participant benefits under one of the optional forms, including Life with Guaranteed Payments, a Joint and Survivor Annuity, and a Lump Sum Distribution, as well as in calculating Early Retirement benefits.

### c. Vesting Requirements

112. Because benefits under the Security Account are computed by reference to hypothetical account balances, the Plan is a "statutory hybrid plan" (*i.e.*, cash balance plan) within the meaning of 26 U.S.C. § 411(a)(13)(C)(i).

113. The Plan provides that "[a] Participant who terminates employment after being credited with at least five (5) years of Service will be entitled to receive his Accrued Retirement Benefit beginning any time after his Early Retirement Date." 2014 Restatement § 4.06; see also 2014 Restatement § 5.04 ("[A] Participant who terminates employment after being credited with at least five (5) years of Service will receive his Accrued Retirement Benefit at his Normal Retirement Date.").

114. The Plan further provides that "[i]f an amendment changes the Plan's vesting schedule, any active Participant who has completed at least three (3) years of Service at the end of the election period described below and whose vested interest will be less under the new vesting schedule than under the old vesting schedule, may make an irrevocable election to have his vested interest determined under the old vesting schedule. This election must be filed between the date the amendment to the vesting schedule is adopted and: (a) Sixty (60) days after the date the amendment is adopted; (b) Sixty (60) days after the date the amendment is effective; or (c) Sixty (60) days after the Employer gives the Participant written notice of the amendment, whichever is latest." 2014 Restatement § 10.01.

### d. Optional Forms of Benefit

115. Under the 2014 Restatement, instead of the applicable normal benefit form, a participant may elect to receive her benefit in one of the following "Actuarial Equivalent" option

forms: life with guaranteed payments, joint and survivor annuity, or a lump sum distribution. 2014 Restatement § 7.03.

116.     In 2014 and 2015, Franciscan Alliance offered a voluntary lump sum payout program to certain eligible participants to receive a full distribution of their pension benefits as a lump sum during their program window. To be eligible, a participant must have terminated employment and had a benefit value less than $100,000 and $25,000 for the program offered in 2015 and 2014, respectively. As a result of these programs, the Plan's projected benefit obligation decreased by $28 million and $59 million for 2014 and 2015, respectively, for the paid benefits.

117.     On June 1, 2016, the Plan was amended effective September 1, 2016 to provide a lump sum optional form of benefit without regard to the actuarial value of the terminated participant's vested accrued retirement benefit. Amendment Number 7 to 2014 Restatement.

### e.     Early Retirement Benefits

118.     Under the 2014 Restatement, a participant is also entitled to an early retirement pension that is reduced by 1/3% for each month by which the participant's early retirement date precedes her normal retirement date.

119.     Accordingly, "[A] Group A Participant who terminates employment on or after his Early Retirement Date may retire and receive a benefit payable monthly in the normal form described in Section 7.01 equal to the largest of (a), (b), (c), or (d), all offset by (e):

(a) (i) The accrued portion of the benefit described in Section 5.01(a)(i) (applicable to Group A Participants) reduced 1/3% for each month by which his Early Retirement Date precedes his Normal Retirement Date; plus (ii) The Actuarial Equivalent of the accrued

portion of the benefit described in Section 5.01(a)(ii) (applicable to Group A Participants);

(b) The accrued portion of the benefit described in Section 5.01(b) (applicable to Group A Participants) reduced by 1.3% for each month by which his Early Retirement Date precedes his Normal Retirement Date;

(c) the actuarial equivalent of the Group A Participant's Security Account projected with interest only to his Normal Retirement Date and determined by applying the mortality table contained in Section 1.04(b) of the Plan set back three years and the average return on 30-Year Treasury Bonds for the November preceding the tart of the Plan Year containing the Group A Participant's Early Retirement Date reduced by 1.3% for each month by which his Early Retirement Date precedes his Normal Retirement Date. Effective January 1, 2008, actuarial equivalent of his Security Account determined by applying the mortality table and interest rates described for calculating lump sums in Section 1.04; or

(d) the accrued portion of the benefit described in Section 5.01(d) (applicable to Group A Participants) reduced by 1/3% for each month by which his Early Retirement Date precedes his Normal Retirement Date.

(e) Any early retirement benefit under the Greater Lafayette [ERISA] Plan." 2014 Restatement § 5.02, as amended by Amendment 5.

120. "[A] Group B Participant who terminates employment on or after his Early Retirement Date may retire and receive the Actuarial Equivalent of the accrued portion of the benefit described in Section 5.01 (applicable to Group B Participants)." 2014 Restatement § 5.02.

### 4.     Defendants Meet the Definition of ERISA Fiduciaries

#### a.     Nature of Fiduciary Status

121.     Every ERISA plan must have one or more "named fiduciaries." ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1). The person named as the "administrator" in the plan instrument is automatically a fiduciary and, in the absence of such a designation, the sponsor is the administrator. ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

122.     ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under § 402(a)(1), 29 U.S.C. § 1102(a)(1), but also any other persons who in fact perform fiduciary functions. Thus, a person is a fiduciary to the extent "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i).

123.     Each of the Defendants was a fiduciary with respect to the Plan and owed fiduciary duties to the Plan and its participants and beneficiaries under ERISA in the manner and to the extent set forth in the Plan's documents and/or through their conduct.

124.     As fiduciaries, Defendants were required by ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), to manage and administer the Plan and the Plan's investments solely in the interest of the Plan's participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

125.     Plaintiffs do not allege that each Defendant was a fiduciary with respect to all aspects of the Plan's management and administration. Rather, as set forth below, Defendants were fiduciaries to the extent of the specific fiduciary discretion and authority assigned to or exercised by each of them, and, as further set forth below, the claims against each Defendant are based on such specific discretion and authority.

126.     ERISA permits fiduciary functions to be delegated to insiders without an automatic violation of the rules against prohibited transactions, ERISA § 408(c)(3), 29 U.S.C. § 1108(c)(3), but insider fiduciaries, like external fiduciaries, must act solely in the interest of participants and beneficiaries, not in the interest of the Plan sponsor.

### b.     The Plan Explicitly States that Defendants Are Each ERISA Fiduciaries

127.     The 2014 Restatement provides that "[t]he Employer [Franciscan Alliance], the Plan Administrator [the Retirement Committee], the Trustee and any Investment Manager [as defined in ERISA Section 3(38)] or adviser are Plan fiduciaries and are responsible for discharging the duties assigned to them in this Article and in the Trust Agreement." 2014 Restatement § 9.01.

### <u>Defendant Franciscan Alliance</u>

128.     Franciscan Alliance is the employer responsible for maintaining the Franciscan Alliance Pension Security Plan and is, therefore, the plan sponsor of the Franciscan Alliance Pension Security Plan within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B). Pursuant to the 2014 Restatement, Franciscan Alliance is responsible for appointing the Plan Administrator, Trustee and any Investment Managers or investment advisers and delegating to

each of them the power needed to perform their duties under the Plan, and regularly reviewing the performance of each person it appoints pursuant to this authority. 2014 Restatement § 9.02.

129.     Franciscan Alliance is required to contribute the amounts specified by the Actuary to fund the Plan and generally to ensure that the Plan is administered consistent with its terms. 2014 Restatement § 9.02. Franciscan Alliance is also responsible for appointing the Trustee. 2014 Restatement § 9.04.  As such, Defendant Franciscan Alliance's responsibilities include fiduciary oversight of the Franciscan Alliance Pension Security Plan.

130.     Defendant Franciscan Alliance is a fiduciary with respect to the Franciscan Alliance Pension Security Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because it exercises discretionary authority or discretionary control respecting management of the Franciscan Alliance Pension Security Plan, exercises authority and control respecting management or disposition of the Franciscan Alliance Pension Security Plan's assets, and/or has discretionary authority or discretionary responsibility in the administration of the Franciscan Alliance Pension Security Plan.

### The Board Defendants

131.     The Board has the right to remove any member of the Retirement Committee at any time and has the power to appoint members of the Retirement Committee to fill a vacancy. 2014 Restatement § 9.03. The Board also has the authority to modify, alter or amend the Plan at any time, subject to certain limitations. 2014 Restatement § 10.01.

132.     Because the Members of the Board of Trustees have the power to appoint, retain and/or remove a plan fiduciary from his or her position, the Board has discretionary authority over the administration of a plan and thus are fiduciaries with respect to the Franciscan Alliance Pension Security Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

133. Each of the Members of the Board of Trustees had a duty to monitor the members of the Retirement Committee that he or she appointed to ensure that the Retirement Committee fulfilled its fiduciary duties and complied with ERISA.

**Franciscan Alliance Retirement Committee Defendants**

134. The Plan document, as amended by Amendment Number 2 dated June 17, 2015, provides that the Retirement Committee will be the Plan Administrator and, at all times, will be comprised of at least three (3) persons. The Plan Administrator is responsible for (a) establishing rules, regulations and procedures it believes necessary or appropriate to administer the Plan; (b) interpreting the Plan and supplying any omitted material in accordance with the Plan's purpose, which will be binding on all parties; (c) deciding all questions concerning eligibility of any Employee to become a Participant; (d) determining the existence and duration of authority leaves of absence and Disabilities; (e) computing the amount of benefits and determining to whom benefits will be paid and directing that benefits be paid; (f) authorizing or denying the payment of Plan benefits; (g) delegating its powers ad duties to others as it deems appropriate; (h) employing accountants, actuaries, agents, consultants, physicians and attorney (who may be counsel to the Company) if necessary to facilitate any Plan purpose; (i) reviewing and implementing bonding and insurance requirements; (j) designation an agent for service of legal process on the Plan; (k) causing the Actuary to prepare an actuarial valuation for the Plan for each full Plan Year; (l) establishing and enforcing the rules, regulations, procedures, investment policies and investment programs it considers appropriate; (m) receiving and evaluating periodic reports form the Trustee, Investment Manager and investment advisers; (n) reviewing the performance of the Trustee, Investment Manager and/or investment adviser; (o) allocating the assets to be managed by each Trustee or Investment Manager; (p) establishing any accounts

called for by the Plan or Trust); (q) reporting, at least annually, to Franciscan Alliance on the investment performance of the Trust Fund; and (r) performing any other act reasonably necessary to discharge its responsibility under the Plan." 2014 Restatement § 9.03.

135.    Defendant Franciscan Alliance Retirement Committee and Defendants John and Jane Does 1-20, as members of the Franciscan Alliance Retirement Committee, are also fiduciaries with respect to the Franciscan Alliance Pension Security Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because they exercise discretionary authority or discretionary control respecting management of the Franciscan Alliance Pension Security Plan, exercise authority and control respecting management or disposition of the Franciscan Alliance Pension Security Plan's assets, and/or have discretionary authority or discretionary responsibility in the administration of the Franciscan Alliance Pension Security Plan.

136.    Plaintiffs reserve the right to amend this Complaint to name other or additional Defendants once they have had the opportunity to conduct discovery on these issues.

137.    Although Franciscan Alliance maintains that the Franciscan Alliance Pension Security Plan is exempt from ERISA coverage as a Church Plan, it claims ERISA status for the Greater Lafayette ERISA Plan.

138.    Compliance with ERISA creates no undue, genuine burden on any religious practice of Franciscan Alliance, as evidence by Franciscan Alliance's claimed compliance with ERISA for the Greater Lafayette ERISA Plan.

## VI.    THE FRANCISCAN ALLIANCE PLAN IS NOT A CHURCH PLAN

139.    The requirements for Church Plan status under ERISA, both as originally adopted in 1974 and as amended in 1980, are very clear. To meet the definition of ERISA's "narrow" church plan exemption, the Plan must be established and maintained by a church.

140.    Fundamental to the scheme, both as originally adopted and as fine-tuned in 1980, was that neither an "affiliate" of a church (using the 1974 language) nor "an organization controlled by or associated with" a church (using the 1980 language) could itself establish a Church Plan. Its employees could be *included* in a Church Plan, but if it sponsored its own plan, that was not a Church Plan. With respect to "pension boards," the 1980 legislation simply clarified the long standing practice that churches could use their own financial organizations to manage their Church Plans.

141.    Three appellate cases have recently concluded that the statutory language in ERISA § 3(33)(A), 29 U.S.C. § 1002(33)(A) is clear—only a church can establish a church plan, that the legislative history underscores this conclusion and that any agency decisions that reach a different conclusion—private letter rulings obtained without input from plan participants—are entitled to no deference. *See Stapleton v. Advocate Health Care Network*, 817 F.3d 517, 2016 WL 1055784 (7th Cir. Mar. 17, 2016); *Rollins v. Dignity Health,* -- F.3d --, 2016 WL 3997259 (9th Cir. July 26, 2016); *Kaplan v. Saint Peter's Healthcare System*, 810 F.3d 175 (3d Cir. 2015).

142.    Franciscan Alliance claims that the Franciscan Alliance Pension Security Plan is a Church Plan under ERISA § 3(33), 29 U.S.C. § 1002(33), and the analogous section of the Internal Revenue Code ("IRC"), and is therefore exempt from ERISA's coverage under ERISA § 4(b)(2), 29 U.S.C. § 1003(b)(2).

### Only Two Types of Plans May Qualify as Church Plans and the Franciscan Alliance Pension Security Plan Is Neither Type

143.    Under § 3(33) of ERISA, 29 U.S.C. § 1002(33), only the following two types of plans may qualify as Church Plans:

- <u>First</u>, under section 3(33)(A) of ERISA, 29 U.S.C. § 1002(33)(A), a plan *established and maintained* by a church or by a convention or association of churches, can qualify under certain circumstances and subject to the restrictions of section 3(33)(B) of ERISA, 29 U.S.C. § 1002(33)(B); and

- <u>Second</u>, under section 3(33)(C)(i) of ERISA, 29 U.S.C. § 1002(33)(C)(i), a plan *established* by a church or by a convention or association of churches that is *maintained* by an organization, *the principal purpose or function of which* is the administration or funding of a retirement plan, if such organization is controlled by or associated with a church or convention or association of churches, can qualify under certain circumstances and subject to the restrictions of section 3(33)(B) of ERISA, 29 U.S.C. § 1002(33)(B).

Both types of plans must be "established" by a church or by a convention or association of churches in order to qualify as "Church Plans."

144.    Although other portions of ERISA § 3(33)(C) address, among other matters, who can be *participants* in Church Plans—in other words, which employees can be in Church Plans, etc.—these other portions of ERISA § 3(33)(C) do not add any other type of *plan* that can be a Church Plan. 29 U.S.C. § 1002(33)(C). The only two types of plans that can qualify as Church Plans are those described in ERISA § 3(33)(A) and in § 3(33)(C)(i). 29 U.S.C. §§ 3(33)(A) and (C)(i).

145.    The Franciscan Alliance Pension Security Plan does not qualify as a Church Plan under either ERISA § 3(33)(A) or § 3(33)(C)(i). 29 U.S.C. §§ 3(33)(A) or (C)(i).

146.    First, under ERISA § 3(33)(A), "[t]he term "church plan" means a plan established and maintained for its employees by a church or by a convention or association of churches which is exempt from tax under section 501 of title 26." ERISA § 3(33)(A), 29 U.S.C. § 1002(33)(A). A church plan "means," and therefore by definition, *must be* "a plan established . . . by a church or convention or association of churches."

147.    The Franciscan Alliance Pension Security Plan at issue here is not a Church Plan as defined in ERISA § 3(33)(A), 29 U.S.C. § 1002(33)(A), because the Franciscan Alliance Pension Security Plan was established, maintained, administered or sponsored by Franciscan Alliance for its own, or its affiliates' own, employees.  Because neither Franciscan Alliance nor its affiliates are a church or a convention or association of churches, nor do they claim to be, the Franciscan Alliance Pension Security Plan was not "established and maintained by" a church or by a convention or association of churches and was not maintained for employees of any church or convention or association of churches. That is the end of the inquiry under ERISA § 3(33)(A), 29 U.S.C. § 1002(33)(A).

148.    Second, under ERISA § 3(33)(C)(i), a Church Plan also includes a plan "established" by a church or by a convention or association of churches that is "maintained by an organization, whether a civil law corporation or otherwise, the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both, for the employees of a church or a convention or association of churches, if such organization is controlled by or associated with a church or a convention or association of churches." ERISA § 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i).

149.    The Franciscan Alliance Pension Security Plan is not a Church Plan as defined in ERISA § 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i), because the Franciscan Alliance Pension Security Plan was not "established" by a church or by a convention or association of churches. Moreover, the Franciscan Alliance Pension Security Plan does not qualify as a "Church Plan" under section 3(33)(C)(i) because it is not maintained by any entity whose principal purpose or function is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both. This ends any argument that the Franciscan Alliance

Pension Security Plan could be a Church Plan under ERISA § 3(33)(C)(i), 29 U.S.C.

§ 1002(33)(C)(i).

150.     In the alternative, to the extent that Franciscan Alliance claims that the Franciscan

Alliance Pension Security Plan qualifies as a "Church Plan" under section 3(33)(C)(i) because it

is "maintained" by an entity within Franciscan Alliance, other than Franciscan Alliance, whose

principal purpose or function is the administration or funding of a plan or program for the

provision of retirement benefits or welfare benefits, the claim fails because the only entity with

the power to "maintain" the Franciscan Alliance Pension Security Plan, which includes the

power to continue and/or terminate the Plan, is Franciscan Alliance. The claim also fails because

if all that is required for a plan to qualify as a church plan is that it meet section C's requirement

that it be maintained by a church-associated organization, there would be no purpose for section

A, which defines a church plan as one established and maintained by a church. This ends any

argument that the Franciscan Alliance Pension Security Plan could be a Church Plan under

ERISA § 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i), because it is maintained by an entity other

than Franciscan Alliance.

151.     However, even if the Franciscan Alliance Pension Security Plan had been

"established" by a church and even if the principal purpose or function of Franciscan Alliance

was the administration or funding of the Franciscan Alliance Pension Security Plan (instead of

running a hospital conglomerate), the Franciscan Alliance Pension Security Plan still would not

qualify as a Church Plan under ERISA § 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i), because the

principal purpose of the Plan is not to provide retirement or welfare benefits to *employees of a*

*church or convention or association of churches*. For example, the approximately

14,600 participants in the Franciscan Alliance Pension Security Plan work for Franciscan

Alliance, a non-profit hospital conglomerate. Franciscan Alliance is not a church or convention or association of churches and its employees are not employees of a church or convention or association of churches within the meaning of ERISA.

152.     Under ERISA § 3(33)(C)(ii), 29 U.S.C. § 1002(33)(C)(ii), however, an employee of a tax exempt organization that is controlled by or associated with a church or a convention or association of churches also may be considered an employee of a church. This part of the definition merely explains which employees a church plan may cover *once a valid church plan is established*. The Franciscan Alliance Plan also fails this part of the definition, because Franciscan Alliance is not controlled by or associated with a church or convention or association of churches within the meaning of ERISA.

153.     Franciscan Alliance is not, and never has been, controlled by a church or convention or association of churches.

154.     Franciscan Alliance is not, and never has been, owned or operated by a church and does not receive funding from a church.[5]

155.     In addition, Franciscan Alliance is not "associated with" a church or convention or association of churches within the meaning of ERISA. Under ERISA § 3(33)(C)(iv), 29 U.S.C. § 1002(33)(C)(iv), an organization "is associated with a church or a convention or association of churches if it shares common religious bonds and convictions with that church or convention or association of churches."

156.     Franciscan Alliance does not share common religious bonds and convictions with a church or association of churches.  For example, Franciscan Alliance tells prospective

---

[5] Notably, if Franciscan Alliance were "controlled by" the Catholic Church or some other church, then those churches would be exposed to significant potential liability stemming from medical malpractice and other legal claims related to the provision of medical care by Franciscan Alliance.

employees that religious affiliation is not a factor in the recruiting and hiring of Franciscan Alliance employees. In choosing to recruit and hire from the population at large, Franciscan Alliance must also be willing to accept generally applicable, neutral regulations, such as ERISA, which protect those employees' legitimate interests.

157.    In addition, Franciscan Alliance has a practice of partnering with organizations that claim no religious affiliation, such as Specialty Physicians of Illinois, a 36 physician and three Advance Nurse Practitioner multi-specialty practice in the south suburbs of Chicago; and Advantage Health Solutions, Inc., a provider-owned health plan. In choosing to compete in the commercial arena of healthcare services and to embark upon a business plan that targets healthcare facilities with no claimed ties to any particular religion, or to religion generally, Franciscan Alliance must be willing to accept neutral regulations, such as ERISA, imposed to protect its employees' legitimate interests.

158.    The Franciscan Alliance Pension Security Plan further fails to satisfy the requirements of ERISA § 3(33)(C)(i) because this section requires the organization that maintains the plan to be "controlled by or associated with" a church or convention or association of churches within the meaning of ERISA. 29 U.S.C. § 1002(33)(C)(i). Thus, even if (1) a church had "established" the Franciscan Alliance Pension Security Plan (which it did not), (2) the principal purpose or function of Franciscan Alliance was the administration or funding of the Franciscan Alliance Pension Security Plan (instead of running a hospital conglomerate), and (3) Franciscan Alliance's employees were employees of a church or convention or association of churches (which they are not), the Franciscan Alliance Pension Security Plan still would not qualify as a Church Plan under ERISA § 3(33)(C)(i) because—for the reasons outlined above—

Franciscan Alliance is not *controlled by or associated with* a church or convention or association of churches within the meaning of ERISA. 29 U.S.C. § 1002(33)(C)(i).

159.    Finally, even if Franciscan Alliance were "controlled by or associated with" a church, and thus its employees were deemed "employees" of a church under ERISA § 3(33)(C)(ii)(2), and even if the Franciscan Alliance Pension Security Plan were "maintained by" either a church or "pension board" satisfying the requirements of ERISA § 3(33)(C)(i), the Franciscan Alliance Pension Security Plan still would not be a "Church Plan" because all "Church Plans" must be "established" by a church or by a convention or association of churches. 29 U.S.C. §§ 1002(33)(A), (C)(i). Although a church may be deemed an "employer" of the employees of an organization that it "controls" or with which it is "associated," *see* ERISA § 3(33)(C)(iii), 29 U.S.C. § 1002(33)(C)(iii), nothing in ERISA provides that the church may be deemed to have "established" a retirement plan that was in fact established by the "controlled" or "associated" organization. Accordingly, because no church established the Franciscan Alliance Pension Security Plan, the Plan cannot be a "Church Plan" within the meaning of ERISA.

### Even if the Franciscan Alliance Pension Security Plan Could Otherwise Qualify as a Church Plan under ERISA §§ 3(33)(A) or (C)(i), it is Excluded From Church Plan Status under ERISA § 3(33)(B)(ii)

160.    Under ERISA § 3(33)(B)(ii), 29 U.S.C. § 1002(33)(B)(ii), a plan is specifically excluded from Church Plan status if less than substantially all of the plan participants are members of the clergy or employed by an organization controlled by or associated with a church or convention or association of churches. In this case, there are approximately 14,600 participants in the Franciscan Alliance Pension Security Plan, and very nearly all of them are non-clergy healthcare workers.

161.    If the approximately 14,600 participants in the Franciscan Alliance Pension Security Plan do not work for an organization that is controlled by or associated with a church or convention or association of churches, then even if the Franciscan Alliance Pension Security Plan could otherwise qualify as a Church Plan under ERISA §§ 3(33)(A) or (C)(i), it still would be foreclosed from Church Plan status under section 3(33)(B)(ii), 29 U.S.C. § 1002(33)(B)(ii).

162.    As set forth above, Franciscan Alliance is not controlled by a church or convention or association of churches, nor does it share common religious bonds and convictions with a church or convention or association of churches.

**Even if the Franciscan Alliance Pension Security Plan Could Otherwise Qualify as a Church Plan under ERISA, the Church Plan Exemption, as Claimed By Franciscan Alliance, Violates the Establishment Clause of the First Amendment of the Constitution, and is Therefore Void and Ineffective**

163.    The Church Plan exemption is an accommodation for *churches* that establish and maintain pension plans, and it allows such plans to be exempt from ERISA.

164.    The Establishment Clause guards against the establishment of religion by the government. The government "establishes religion" when, among other activities, it privileges those with religious beliefs (e.g. exempts them from neutral regulations) at the expense of non-adherents and/or while imposing legal and other burdens on nonmembers. Extension of the Church Plan exemption to Franciscan Alliance, a non-church entity, privileges Franciscan Alliance for its claimed faith at the expense of its employees, who are told that their faith is not relevant to their employment, yet who are then denied the benefit of insured, funded pensions, as well as many other important ERISA protections. Similarly, Franciscan Alliance, a non-church entity, has a privileged economic advantage over its competitors in the commercial arena it has chosen, based solely on Franciscan Alliance's claimed religious beliefs. This too is prohibited by

the Establishment Clause. Simply put, when government provides a regulatory exemption "exclusively to religious organizations that is not required by the Free Exercise Clause and that . . . burdens nonbeneficiaries," it has endorsed religion in violation of the Establishment Clause. *See, e.g.*, *Tex. Monthly, Inc. v. Bullock*, 489 U.S. 1, 15, 18 n. 8 (1989) (plurality opinion).

165.     As set forth in more detail below in Count XII, the extension of the Church Plan accommodation to Franciscan Alliance, which is not a church, violates the Establishment Clause because it is not necessary to further the stated purposes of the exemption, harms Franciscan Alliance workers, puts Franciscan Alliance competitors at an economic disadvantage, relieves Franciscan Alliance of no genuine religious burden created by ERISA, and creates more government entanglement with alleged religious beliefs than compliance with ERISA creates. Accordingly, the Church Plan exemption, as claimed by Franciscan Alliance, is void and ineffective.

## VII.     CLASS ALLEGATIONS

166.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all participants and beneficiaries of the defined benefit pension plans that are established, maintained, administered and/or sponsored by Franciscan Alliance (or its successors), Franciscan Alliance's affiliates and/or by Franciscan Alliance's committees, and operated as or claimed to be "church plans," (collectively referred to as the "Franciscan Alliance Plan") including the Franciscan Alliance Pension Security Plan.

167.     Excluded from the Class are any high-level executives at Franciscan Alliance or any employees who have responsibility or involvement in the administration of the Plan, or who are subsequently determined to be fiduciaries of the Franciscan Alliance Pension Security Plan, including the Individual Defendants.

**A.**     **Numerosity**

168.     The exact number of Class members is unknown to Plaintiffs at this time, but may be readily determined from records maintained by Franciscan Alliance. Franciscan Alliance currently employs approximately 14,600 individuals. Upon information and belief, many, if not all, of those persons are likely members of the Class, and thus the Class is so numerous that joinder of all members is impracticable.

**B.**     **Commonality**

169.     The issues regarding liability in this case present common questions of law and fact, with answers that are common to all members of the Class, including (1) whether the Plan is exempt from ERISA as a Church Plan, and, if not, (2) whether the fiduciaries of the Plan have failed to administer and failed to enforce the funding obligations of the Plan in accordance with ERISA.

170.     The issues regarding the relief are also common to the members of the Class as the relief will consist of (1) a declaration that the Plan is an ERISA covered plan; (2) an order requiring that the Plan comply with the administration and enforce the funding obligations of the Plan in accordance with ERISA; and (3) an order requiring Franciscan Alliance to pay civil penalties to the Class, in the same statutory daily amount for each member of the Class.

**C.**     **Typicality**

171.     Plaintiffs' claims are typical of the claims of the other members of the Class because their claims arise from the same event, practice and/or course of conduct, namely Defendants' failure to maintain the Plan in accordance with ERISA. Plaintiffs' claims are also typical because all Class members are similarly affected by Defendants' wrongful conduct.

172.     Plaintiffs' claims are also typical of the claims of the other members of the Class because, to the extent Plaintiffs seek equitable relief, it will affect all Class members equally. Specifically, the equitable relief sought consists primarily of (i) a declaration that the Franciscan Alliance Pension Security Plan is not a Church Plan; and (ii) a declaration that the Franciscan Alliance Pension Security Plan is an ERISA covered plan that must comply with the administration and funding requirements of ERISA. In addition, to the extent Plaintiffs seek monetary relief, it is for civil fines to the Class in the same statutory daily amount for each member of the Class.

173.     Franciscan Alliance does not have any defenses unique to Plaintiffs' claims that would make Plaintiffs' claims atypical of the remainder of the Class.

**D.     Adequacy**

174.     Plaintiffs will fairly and adequately represent and protect the interests of all members of the Class.

175.     Plaintiffs do not have any interests antagonistic to or in conflict with the interests of the Class.

176.     Defendant Franciscan Alliance and the Individual Defendants have no unique defenses against the Plaintiffs that would interfere with Plaintiffs' representation of the Class.

177.     Plaintiffs have engaged counsel with extensive experience prosecuting class actions in general and ERISA class actions in particular.

**E.     Rule 23(b)(1) Requirements**

178.     The requirements of Rule 23(b)(1)(A) are satisfied because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants.

179.    The requirements of Rule 23(b)(1)(B) are satisfied because adjudications of these claims by individual members of the Class would, as a practical matter, be dispositive of the interests of the other members not parties to the actions, or substantially impair or impede the ability of other members of the Class to protect their interests.

**F.      Rule 23(b)(2) Requirements**

180.    Class action status is also warranted under Rule 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

**G.      Rule 23(b)(3) Requirements**

181.    If the Class is not certified under Rule 23(b)(1) or (b)(2), then certification under (b)(3) is appropriate because questions of law or fact common to members of the Class predominate over any questions affecting only individual members. The common issues of law or fact that predominate over any questions affecting only individual members include:  (1) whether the Plan is exempt from ERISA as a Church Plan, and, if not, (2) whether the fiduciaries of the Plan have failed to administer and fund the Plan in accordance with ERISA, and (3) whether the Church Plan exemption, as claimed by Franciscan Alliance, violates the Establishment Clause of the First Amendment. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

A.      Individual Class members do not have an interest in controlling the prosecution of these claims in individual actions rather than a class action because the equitable relief sought by any Class member will either inure to the benefit of the Plan or affect each class member equally;

B.    Individual Class members also do not have an interest in controlling the prosecution of these claims because the monetary relief that they could seek in any individual action is identical to the relief that is being sought on their behalf herein;

C.    There is no other litigation begun by any other Class members concerning the issues raised in this litigation;

D.    This litigation is properly concentrated in this forum, which is where Defendant Franciscan Alliance transacts business; and

E.    There are no difficulties managing this case as a class action.

## VIII.    CAUSES OF ACTION

### COUNT I

**(Claim for Equitable Relief Pursuant to ERISA §§ 502(a)(2) and 502(a)(3) Against Defendants Franciscan Alliance; the Retirement Committee; and John and Jane Does 1-20, the Retirement Committee Member Defendants)**

182.    Plaintiffs repeat and re-allege the allegations contained in all foregoing paragraphs herein.

183.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to obtain "appropriate equitable relief ... to enforce any provisions of this title." Pursuant to this provision, 28 U.S.C. §§ 2201 and 2202, and Federal Rule of Civil Procedure 57, Plaintiffs seek declaratory relief that the Franciscan Alliance Pension Security Plan is not a Church Plan within the meaning of ERISA § 3(33), 29 U.S.C. § 1002(33), and thus is subject to the provisions of Title I and Title IV of ERISA.

184.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), also authorizes a participant or beneficiary to bring a civil action "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to

redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." Pursuant to these provisions, Plaintiffs seek orders directing the Franciscan Alliance Pension Security Plan's sponsor and administrator to bring the Franciscan Alliance Pension Security Plan into compliance with ERISA.

185.     ERISA § 502(a)(2), 29 U.S.C. § 1132(2), authorizes a participant or beneficiary to bring a civil action for appropriate relief under 29 U.S.C. § 1109(a), against a fiduciary "who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries" and the fiduciary "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate." Because the operation of the Plan as a non-ERISA plan was a breach of Defendants' fiduciary duties, the Defendants breached their fiduciary duties and Plaintiffs also seek plan-wide equitable and remedial relief under ERISA § 502(a)(2).

186.     As the Franciscan Alliance Pension Security Plan is not a Church Plan within the meaning of ERISA § 3(33), 29 U.S.C. § 1002(33), and meets the definition of a pension plan under ERISA § 3(2), 29 U.S.C. § 1002(2), the Franciscan Alliance Pension Security Plan should be declared to be an ERISA-covered pension plan, and the Franciscan Alliance Pension Security Plan's sponsor and administrator should be ordered to bring the Franciscan Alliance Pension Security Plan into compliance with ERISA, including by remedying the violations set forth below.

## COUNT II

**(Claim for Violation of ERISA § 203 and for Equitable Relief Pursuant to ERISA §§ 502(a)(2) and 502(a)(3) Against Defendants Franciscan Alliance; the Retirement Committee; and John and Jane Does 1-20, the Retirement Committee Member Defendants)**

187.    Plaintiffs incorporate and re-allege by reference the foregoing paragraphs as if fully set forth herein.

188.    ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

189.    The Franciscan Alliance Pension Security Plan is a "statutory hybrid plan" (i.e., cash balance plan) because it is a defined benefit plan under which the accrued benefit (or any portion thereof) of a participant is calculated as the balance of a hypothetical account maintained for the participant or as an accumulated percentage of the participant's final average compensation. 26 U.S.C. § 411(a)(13)(C)(i).

190.    26 U.S.C. § 411(a)(13)(B) requires a statutory hybrid plan to provide that an employee who has completed at least three years of service has a non-forfeitable right to 100 percent of the employee's accrued benefit derived from employer contributions. The three-year vesting requirement applies even if a portion of the participant's benefit is not determined under a hybrid benefit formula. 26 C.F.R. § 1.411(a)(13)-1(c) ("if any portion of the participant's accrued benefit under a defined benefit plan is determined under a statutory hybrid benefit formula, the plan is treated as failing to satisfy the requirements of section 411(a)(2) unless the

plan provides that the participant has a non-forfeitable right to 100 percent of the participant's accrued benefit if the participant has three or more years of service").

191.     As a cash balance plan, the Plan is required to comply with the special rules for cash balance plans, including but not limited to ERISA § 203(f)(2), 29 U.S.C. § 1053(f)(2), which requires that any employee who has completed at least three years of service has a non-forfeitable right to 100 percent of the employee's accrued benefit accrued from employer contributions. In other words, the maximum vesting period allowable is three years.

192.     Under 203(a)(2) and (f)(2), 29 U.S.C. §§ 1053(a)(2) and (f)(2), and the parallel IRC provisions and regulations, the Plan is not permitted to have greater than 3 year vesting requirement for any participant who accrued benefits for any period from January 1, 1998 through December 31, 2013.

193.     The Plan violates ERISA sections 203(a)(2) and (f)(2), 29 U.S.C. §§ 1053(a)(2) and (f)(2), because it requires 5 years of Service for any participant to become fully vested in benefits under the Plan, when any participant who accrued benefits for any period from January 1, 1998 through December 31, 2013 cannot be required to complete more than three years of service to become fully vested in his or her benefits under the Plan under ERISA 203(a)(2) and (f)(2), 29 U.S.C. §§ 1053(a)(2) and (f)(2), and the parallel IRC provisions and regulations.

194.     Pursuant to ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek an order that all participants who accrued benefits for any period from January 1, 1998 through December 31, 2013 and who have completed three years of Service are fully vested in their accrued benefits under the Plan.

195.     Pursuant to ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek an order requiring the Plan administrator to furnish all participants in the Plan with a benefit

statement that is compliant with ERISA and that states their vested retirement benefit based on a proper vesting period, in particular, those participants who accrued benefits for any period from January 1, 1998 through December 31, 2013.

196. Pursuant to ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek an order directing the Plan's sponsor and administrator to retroactively amend and/or reform the Plan to comply with ERISA section 203(f)(2), 29 U.S.C. § 1053(f)(2), which requires that any participant who accrued benefits for any period from January 1, 1998 through December 31, 2013 and who has completed at least three years of Service (at any time whether completion of three years occurred between January 1, 1998 through December 31, 2013) has a non-forfeitable right to 100 percent of the employee's accrued benefit derived from employer contributions.

197. Plaintiffs seek an order requiring the Plan to pay all participant who accrued benefits for any period from January 1, 1998 through December 31, 2013 and who has completed at least three years of Service the Group B cut-back participants who received a distribution of their benefits the additional benefits they are owed based on the proper accrual rate that was in effect prior to amendment changing the accrual rate for Group B participants.

198. Pursuant to ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek an order requiring the Plan sponsor to contribute additional funding to the Plan, as required by ERISA section 302, 29 U.S.C. §§ 1052, to cover the additional Plan liabilities resulting from the accrued benefits owed to all participants who have completed three years of service but less than five years of service and therefore to date have not been considered to be fully vested in their accrued benefits under the Plan, but under ERISA are fully vested.

199. The Plan administrators have violated ERISA section 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), to the extent they have followed Plan documents that are inconsistent with ERISA.

200. As such, Franciscan Alliance is personally liable for any losses to the Plan under ERISA section 502(a)(2), 29 U.S.C. § 1132(a)(2), or to participants individually under ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3) for all losses, or to provide appropriate equitable relief to remedy their violations of ERISA section 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).

201. Plaintiffs also seek to disgorge any ill-gotten gains or cost savings received by the Defendants as a result of the impermissible vesting schedule pursuant to ERISA section 502(a)(2), 29 U.S.C. § 1132(a)(2) and ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3).

## COUNT III

**(Claim for Violation of ERISA § 204(g) and for Equitable Relief Pursuant to ERISA §§ 502(a)(2) and 502(a)(3) Against Defendants Franciscan Alliance; the Retirement Committee; and John and Jane Does 1-20, the Retirement Committee Member Defendants)**

202. Plaintiffs incorporate and re-allege by reference the foregoing paragraphs as if fully set forth herein.

203. ERISA § 204(g)(1) and (2) provides that "[t]he accrued benefit of a participant under a plan may not be decreased by an amendment of the plan," including "a plan amendment which has the effect of-- (A) eliminating or reducing an early retirement benefit or a retirement-type subsidy (as defined in regulations), or (B) eliminating an optional form of benefit, with respect to benefits attributable to service before the amendment . . ." 29 U.S.C. § 1054(g)(1) and (2).

**Amendment to the Definition of Actuarial Equivalent**

204.    The 2014 Restatement defined "Actuarial Equivalent" to mean "[t]he equivalent value of the normal form of payment described in Section 7.01 when it is converted to an optional payment form or paid at a date other than the Participant's Normal Retirement Date. This comparison will be made by applying the RP-2000 Combined No Collar Mortality Table, projected to 2015 (weighted 85% Female/15% Male for a Participant, 15% Female/85% Male for a beneficiary) and seven percent (7%) interest, compounded annually." 2014 Restatement § 1.03.

205.    Amendment 5 changed the definition of "Actuarial Equivalent" in § 1.03 of the 2014 Restatement to reduce the interest rate used to convert the normal form of payment to an optional form of payment from 7% to 5.5%, effective September 1, 2015.

206.    The change in the definition of "Actuarial Equivalent" impacts the formula used to determine certain optional forms of benefits, including forms available in early retirement.

207.    All other factors being equal, using a lower interest rate to convert a participant's account balance to an optional form of benefit impermissibly reduces the participant's "accrued benefit" under the Plan.

208.    Participants who elected pension distributions in certain optional forms (Life with Guaranteed Payments under § 7.03(a) or Joint and Survivor Annuity under §7.03(b))) or as an early retirement benefit under § 5.02 on or after September 1, 2015, received less than they would have received prior to the amendment which reduced the interest rate from 7% to 5.5%. This reduction in accrued benefits constitutes an unlawful cutback under ERISA section 204(g), 29 U.S.C. § 1054(g).

209.    ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action "(A) to enjoin any act or practice which violates any provision

of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

210. To the extent the members of the Class have received a distribution amount that is less than it should have been because it was calculated using an incorrect interest rate, there has been an unlawful cutback of benefits to which participants are entitled.

211. Pursuant to ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek an order directing the Plan's sponsor and administrator to retroactively reform the Plan to make clear that all participants who were in the Plan prior to September 1, 2015 are entitled to have their optional forms of benefits calculated using a 7% interest rate.

212. Pursuant to ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek an order requiring the Retirement Committee Defendants to furnish all participants who were in the Plan prior to September 1, 2015 with a benefit statement that reflects a 7% actuarial equivalence rate where applicable.

213. Plaintiffs seek an order requiring the Plan to pay all participants who received a distribution in the form of an optional form of benefit on or after September 1, 2015 the additional benefits they are owed based on an 7% actuarial equivalence rate both retroactively (with interest) and prospectively.

214. The Plan administrators have violated ERISA section 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), to the extent they have followed Plan documents that are inconsistent with ERISA. Pursuant to ERISA sections 404(a)(1)(D) and 502(a)(3), 29 U.S.C. §§ 1104(a)(1)(D) and 1132(a)(3), Plaintiffs seek an order requiring the Administrator Defendants to calculate the distribution amount that members of the Class would have received under the Plan document

retroactively reformed to comply with ERISA and to pay to participants the additional monies to which they are entitled.

215.     As such, Franciscan Alliance is personally liable for any losses to the Plan under ERISA section 502(a)(2), 29 U.S.C. § 1132(a)(2) or to participants individually under ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3) for all losses or to provide appropriate equitable relief to remedy their violations of ERISA section 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).

216.     Plaintiffs also seek to disgorge any ill-gotten, gains or cost savings received by the Defendants as a result of the impermissible reduction of the actuarial equivalence rate, which amounted to an impermissible cutback of benefits, under ERISA sections 502(a)(2), 29 U.S.C. § 1132(a)(2) and ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3).

217.     Pursuant to ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek an order requiring Franciscan Alliance to contribute additional funding to the Plan, as required by ERISA section 302, 29 U.S.C. §§ 1052, to cover the additional Plan liabilities resulting from the additional benefits owed to participants who received a distribution amount that was less than it should have been because the Plan did not use an 7% interest rate to determine their monthly benefit of equivalent value.

**Amendment to the Definition Average Monthly Earnings**

218.     Section 1.06 defines "Average Monthly Earnings" which is used to calculate a participant's benefits under Section 5.01 of the Plan.  Prior to January 1, 2014, under Section 1.06, for  "For Employees terminating on or after January 1, 2004" "Average Monthly Earnings" was defined as "the Participant's highest average Monthly Earnings during the five (5) consecutive, complete calendar years before his Retirement Date or the date he terminates employment."

219.     On or about January 1. 2014, the Plan was amended to change Section 1.06 such that "For Employees terminating on or after January 1, 2014, "Average Monthly Earnings," was defined as the "Participant's highest average Monthly Earnings during the seven (7) consecutive, complete calendar years before his Retirement Date or the date he terminates employment."

220.     For any participant for whom the accrued benefits (earned prior to the amendment) were reduced as a result of the amendment that changed definition of "Average Monthly Earnings," such amendment impermissibly reduces the participant's "accrued benefit" under the Plan.

221.     Any reduction in accrued benefits constitutes an unlawful cutback under ERISA section 204(g), 29 U.S.C. § 1054(g).

222.     ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

223.     Pursuant to ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek an order directing the Plan's sponsor and administrator to retroactively reform the Plan with respect to all participants who terminated on or after January 1, 2014, such that any accrued benefits earned prior to the amendment changing the definition of "Average Monthly Earnings" will not be reduced as a result of such amendment.

224.     Plaintiffs seek an order requiring the Plan to pay all participants who terminated on or after January 1, 2014 and who received a distribution of benefits, of which at least a portion was accrued prior to the amendment changing the definition of "Average Monthly

Earnings," to pay such participants the amount of any benefit reduction caused by such amendment.

225.    The Plan administrators have violated ERISA section 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), to the extent they have followed Plan documents that are inconsistent with ERISA. Pursuant to ERISA sections 404(a)(1)(D) and 502(a)(3), 29 U.S.C. §§ 1104(a)(1)(D) and 1132(a)(3), Plaintiffs seek an order requiring the Administrator Defendants to calculate the distribution amount that members of the Class would have received under the Plan document retroactively reformed to comply with ERISA and to pay to participants the additional monies to which they are entitled.

226.    As such, Franciscan Alliance is personally liable for any losses to the Plan under ERISA section 502(a)(2), 29 U.S.C. § 1132(a)(2) or to participants individually under ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3) for all losses or to provide appropriate equitable relief to remedy their violations of ERISA section 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).

227.    Plaintiffs also seek to disgorge any ill-gotten, gains or cost savings received by the Defendants as a result of the impermissible cutback caused by the change to the definition of Average Monthly Earnings, under ERISA sections 502(a)(2), 29 U.S.C. § 1132(a)(2) and ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3).

228.    Pursuant to ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek an order requiring Franciscan Alliance to contribute additional funding to the Plan, as required by ERISA section 302, 29 U.S.C. §§ 1052, to cover the additional Plan liabilities resulting from the additional benefits owed to participants who received a distribution amount that was less than it should have been because of the change to the definition of Average Monthly Earnings.

# COUNT IV

**(Claim for Violation of ERISA § 204(g) and for Equitable Relief Pursuant to ERISA
§§ 502(a)(2) and 502(a)(3) Against Defendants Franciscan Alliance; the Retirement
Committee; and John and Jane Does 1-20, the Retirement Committee Member Defendants)**

229.     Plaintiffs incorporate and re-allege by reference the foregoing paragraphs as if fully set forth herein.

230.     ERISA § 204(g)(1) and (2) provide that "[t]he accrued benefit of a participant under a plan may not be decreased by an amendment of the plan," including "a plan amendment which has the effect of-- (A) eliminating or reducing an early retirement benefit or a retirement-type subsidy (as defined in regulations), or (B) eliminating an optional form of benefit, with respect to benefits attributable to service before the amendment . . ." 29 U.S.C. § 1054(g)(1) and (2).

231.     Effective January 1, 2014, the Plan was amended to create "different benefit formulas and early retirement reduction factors for 'Group A Participants' and 'Group B Participants' (as defined in Section 1.24)."

232.     Effective January 1, 2014, Section 1.24 was amended to differentiate participants as either Group A or Group B participants and stated that "Group A Participant means a Participant who is an Employee on December 31, 2013 and who is fully vested in his Accrued Retirement Benefit as of such date. Group B Participant means a Participant who meets any of the following criteria: (a) a Participant who is an Employee on December 31, 2013 and who is not fully vested in his Accrued Retirement Benefit as of such date; (b) a Participant who first performs an Hour of Service for the Employer on or after January 1, 2014; or (c) a Participant whose Participation Date is on or after January 1, 2014 (including former employees who are rehired on or after January 1, 2014)."

233.     Prior to January 1, 2014, any Group B participant with greater than one but less than five years of Service as of December 31, 2013, accrued benefits at the same, higher, accrual rate set forth in section 5.01 for Group A participants.

234.     The amendment creating a significantly lower rate of accrual for Group B participants impermissibly reduced the "accrued benefit" under the Plan of the Group B participants with at least one but less than five years of service as of December 31, 2013 (hereinafter referred to as "the Group B cut-back participants") because such participants had already accrued benefits at the higher accrual rate prior to the amendment.

235.     This reduction in accrued benefits constitutes an unlawful cutback under ERISA section 204(g), 29 U.S.C. § 1054(g).

236.     ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

237.     Pursuant to ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek an order directing the Plan's sponsor and administrator to retroactively reform the Plan to grandfather in any benefits accrued prior to January 1, 2014 of the Group B cut-back participants at accrual rate in effect prior to amendment changing the accrual rate for Group B participants.

238.     Pursuant to ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek an order requiring the Retirement Committee Defendants to furnish all the Group B cut-back participants with a benefit statement that reflects the proper accrual rate that was in effect prior to amendment changing the accrual rate for Group B participants.

239.     Plaintiffs seek an order requiring the Plan to pay all the Group B cut-back participants who received a distribution of their benefits the additional benefits they are owed based on the proper accrual rate that was in effect prior to amendment changing the accrual rate for Group B participants.

240.     The Plan administrators have violated ERISA section 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), to the extent they have followed Plan documents that are inconsistent with ERISA. Pursuant to ERISA sections 404(a)(1)(D) and 502(a)(3), 29 U.S.C. §§ 1104(a)(1)(D) and 1132(a)(3),

241.     Plaintiffs seek an order requiring the Administrator Defendants to calculate the distribution amount that the Group B cut-back participants should have received under a Plan document retroactively reformed to comply with ERISA 204(g) and to pay such participants the additional monies to which they are entitled.

242.     As such, Franciscan Alliance is personally liable for any losses to the Plan under ERISA section 502(a)(2), 29 U.S.C. § 1132(a)(2) or to participants individually under ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3) for all losses or to provide appropriate equitable relief to remedy their violations of ERISA section 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).

243.     Plaintiffs also seek to disgorge any ill-gotten, gains or cost savings received by the Defendants as a result of the impermissible reduction of the actuarial equivalence rate under ERISA sections 502(a)(2), 29 U.S.C. § 1132(a)(2) and ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3).

244.     Pursuant to ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek an order requiring Franciscan Alliance to contribute additional funding to the Plan, as required by

ERISA section 302, 29 U.S.C. §§ 1052, to cover the additional Plan liabilities resulting from the additional benefits owed to the Group B cut-back participants.

## COUNT V

### (Claim for Violation of Reporting and Disclosure Provisions Against Defendants Retirement Committee; and John and Jane Does 1-20, the Retirement Committee Member Defendants)

245.    Plaintiffs incorporate and re-allege by reference the foregoing paragraphs as if fully set forth herein.

### 1.    Summary Plan Descriptions

246.    At no time has the Retirement Committee or its members provided Plaintiffs or any member of the Class with a Summary Plan Description with respect to the Plan that meets the requirements of ERISA § 102, 29 U.S.C. § 1022, and the regulations promulgated thereunder.

247.    Because the Retirement Committee has been the Plan Administrator of the Plan at all relevant times, it violated ERISA § 104, 29 U.S.C. § 1024, by failing to provide Plaintiffs and members of the Class with adequate Summary Plan Descriptions.

### 2.    Annual Reports

248.    At no time has the Retirement Committee or its members filed an annual report with respect to the Plan with the Secretary of Labor in compliance with ERISA § 103, 29 U.S.C. § 1023, nor has it filed a Form 5500 and associated schedules and attachments, which the Secretary has approved as an alternative method of compliance with ERISA § 103, 29 U.S.C. § 1023.

249.    Because the Retirement Committee has been the Plan Administrator of the Plan at all relevant times, the Retirement Committee Defendants have violated ERISA § 104(a), 29

U.S.C. § 1024(a), by failing to file annual reports with respect to the Plan with the Secretary of Labor in compliance with ERISA § 103, 29 U.S.C. § 1023, or Form 5500s and associated schedules and attachments, which the Secretary has approved as an alternate method of compliance with ERISA § 103, 29 U.S.C. § 1023.

### 3. Summary Annual Reports

250. At no time has the Retirement Committee or its members furnished Plaintiffs or any member of the Class with a Summary Annual Report with respect to the Plan in compliance with ERISA § 104(b)(3) and regulations promulgated thereunder. 29 U.S.C. § 1024(b)(3).

251. Because the Retirement Committee has been the Plan Administrator of the Plan at all relevant times, the Retirement Committee Defendants have violated ERISA § 104(b)(3), 29 U.S.C. § 1024(b)(3), by failing to furnish Plaintiffs or any member of the Class with a Summary Annual Report with respect to the Plan in compliance with ERISA § 104(b)(3) and the regulations promulgated thereunder. 29 U.S.C. § 1024(b)(3).

### 4. Notification of Failure to Meet Minimum Funding

252. At no time has Franciscan Alliance  or its members furnished Plaintiffs or any member of the Class with a Notice with respect to the Plan pursuant to ERISA § 101(d)(1), 29 U.S.C. § 1021(d)(1), informing them that Franciscan Alliance had failed to make payments required to comply with ERISA § 302, 29 U.S.C. § 1082, with respect to the Plan.

253. Defendant Franciscan Alliance has been the employer that established and/or maintained the Plan.

254. At no time has Defendant Franciscan Alliance funded the Plan in accordance with ERISA § 302, 29 U.S.C. § 1082.

255. As the employer maintaining the Plan, Defendant Franciscan Alliance has violated ERISA § 302, 29 U.S.C. § 1082, by failing to fund the Plan. As such, Defendant Franciscan Alliance has violated ERISA § 101(d)(1), 29 U.S.C. § 1021(d)(1), and as such may be required by the Court to pay Plaintiffs and each class member up to $110 per day (as permitted by 29 C.F.R. § 2575.502(c)(3)) for each day that Defendant Franciscan Alliance has failed to provide Plaintiffs and each Class member with the notice required by ERISA § 101(d)(1), 29 U.S.C. § 1021(d)(1).

### 5. Funding Notices

256. At no time has the Retirement Committee or its members furnished Plaintiffs or any member of the Class with a Funding Notice with respect to the Plan pursuant to ERISA § 101(f), 29 U.S.C. § 1021(f).

257. Because the Retirement Committee has been the Plan Administrator of the Plan at all relevant times, it has violated ERISA § 101(f) by failing to provide each participant and beneficiary of the Plan with the Funding Notice required by ERISA § 101(f), and as such may be required by the Court to pay Plaintiffs and each Class member up to $110 per day (as permitted by ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1), amended by 29 C.F.R. § 2575.502c-1) for each day that Defendant Retirement Committee has failed to provide Plaintiffs and each Class member with the notice required by ERISA § 101(f). 29 U.S.C. § 1021(f).

### 6. Pension Benefit Statements

258. At no time has the Retirement Committee or its members furnished Plaintiffs or any member of the Class with a Pension Benefit Statement with respect to the Plan pursuant to ERISA § 105(a)(1), 29 U.S.C. § 1025(a)(1).

259.     Because the Retirement Committee has been the Plan Administrator of the Plan at all relevant times, it has violated ERISA § 105(a)(1) and as such may be required by the Court to pay Plaintiffs and each Class member up to $110 per day (as permitted by ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1), amended by 29 C.F.R. § 2575.502c-1) for each day that Defendant Retirement Committee has failed to provide Plaintiffs and each Class member with the Pension Benefit Statements required by ERISA § 105(a)(1).  29 U.S.C. § 1025(a)(1).

## COUNT VI

### (Claim for Failure to Provide Minimum Funding Against Defendant Franciscan Alliance)

260.     Plaintiffs incorporate and re-allege by reference the foregoing paragraphs as if fully set forth herein.

261.     ERISA § 302, 29 U.S.C. § 1082, establishes minimum funding standards for defined benefit plans that require employers to make minimum contributions to their plans so that each plan will have assets available to fund plan benefits if the employer maintaining the plan is unable to pay benefits out of its general assets.

262.     Franciscan Alliance was responsible for making the contributions that should have been made pursuant to ERISA § 302, 29 U.S.C. § 1082, at a level commensurate with that which would be required under ERISA.

263.     Franciscan Alliance has failed to make contributions in satisfaction of the minimum funding standards of ERISA § 302, 29 U.S.C. § 1082.

264.     By failing to make the required contributions to the Plan, either in whole or in partial satisfaction of the minimum funding requirements established by ERISA § 302, Defendant Franciscan Alliance has violated ERISA § 302, 29 U.S.C. § 1082.

## COUNT VII

**(Claim for Failure to Establish the Plan Pursuant to a Written Instrument Meeting the Requirements of ERISA § 402 Against Defendant Franciscan Alliance)**

265.    Plaintiffs incorporate and re-allege by reference the foregoing paragraphs as if fully set forth herein.

266.    ERISA § 402, 29 U.S.C. § 1102, provides that every plan will be established pursuant to a written instrument which will provide, among other things, "for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan" and will "provide a procedure for establishing and carrying out a funding policy and method constituent with the objectives of the plan and the requirements of [Title I of ERISA]."

267.    Although the benefits provided by the Plan were described to the employees and retirees of Franciscan Alliance (and/or its affiliates and subsidiaries) in various written communications, the Plan has never been established pursuant to a written instrument meeting the requirements of ERISA § 402, 29 U.S.C. § 1102.

268.    Defendant Franciscan Alliance violated section 402 by failing to promulgate written instruments in compliance with ERISA § 402 to govern the Plan's operations and administration. 29 U.S.C. § 1102.

## COUNT VIII

**(Claim for Failure to Establish a Trust Meeting the Requirements of ERISA § 403 Against Defendant Franciscan Alliance)**

269.    Plaintiffs incorporate and re-allege by reference to the foregoing paragraphs as if fully set forth herein.

270. ERISA § 403, 29 U.S.C. § 1103, provides, subject to certain exceptions not applicable here, that all assets of an employee benefit plan shall be held in trust by one or more trustees, that the trustees shall be either named in the trust instrument or in the plan instrument described in § 402(a), 29 U.S.C. § 1102(a), or appointed by a person who is a named fiduciary.

271. Although the Plan's assets have been held in trust, the trust does not meet the requirements of ERISA § 403, 29 U.S.C. § 1103.

272. Defendant Franciscan Alliance violated section 403 by failing to put the Plan's assets in trust in compliance with ERISA § 403, 29 U.S.C. § 1103.

## COUNT IX

### (Claim for Clarification of Benefits Under ERISA §§ 502(a)(1)(B) and 502(a)(3) Against Defendant Franciscan Alliance)

273. Plaintiffs incorporate and re-allege by reference the foregoing paragraphs as if fully set forth herein.

274. ERISA § 502(a)(1)(B), 29 U.S.C. § 1102(a)(1)(B), provides, in part, that a participant or beneficiary may bring a civil action to "clarify his rights to future benefits under the terms of the plan."

275. The Plan has not been operated in compliance with ERISA since at least 1998.

276. Pursuant to ERISA §§ 502(a)(1)(B), (3), 29 U.S.C. §§ 1132(a)(1)(B), (3), once the Plan is retroactively and prospectively made compliant with ERISA, Plaintiffs seek to clarify their rights under the terms of the Plan and to require Defendant Franciscan Alliance to provide Plaintiffs and the Class with a calculation of their benefits which is ERISA-compliant and with a clear explanation of how each participant's benefits are calculated, including but not limited to a statement of: how the participant's benefit value is calculated under 5.01(a), (b), (c), (d), and (e);

the value of the participant's Security Account and the applicable interest rate and mortality table used to convert the Security Account into a monthly benefit (normal form); the years of Service, the years used to calculate Average Monthly Earnings, and the actuarial equivalent of any optional forms of benefits (including the interest rate and mortality table used to calculate each optional form); and the number of years of vested service the participant has accumulated.

## COUNT X

**(Claim for Civil Money Penalty Pursuant to ERISA § 502(a)(1)(A) Against Defendants Franciscan Alliance; the Retirement Committee; and John and Jane Does 1-20, the Retirement Committee Member Defendants)**

277. Plaintiffs incorporate and re-allege by reference the foregoing paragraphs as if fully set forth herein.

278. ERISA § 502(a)(1)(A), 29 U.S.C. § 1132(a)(1)(A), provides that a participant may bring a civil action for the relief provided in ERISA § 502(c), 29 U.S.C. § 1132(c).

279. ERISA § 502(c)(3), 29 U.S.C. § 1132(c)(3), as provided in 29 C.F.R. § 2575.502c-3, provides that an employer maintaining a plan who fails to meet the notice requirement of ERISA § 101(d), 29 U.S.C. § 1021(d), with respect to any participant and beneficiary may be liable for up to $110 per day from the date of such failure.

280. ERISA § 502(c)(3), 29 U.S.C. § 1132(c)(3), as provided in 29 C.F.R. § 2575.502c-3, provides that an administrator of a defined benefit pension plan who fails to meet the notice requirement of ERISA § 101(f), 29 U.S.C. § 1021(f), with respect to any participant and beneficiary may be liable for up to $110 per day from the date of such failure.

281. ERISA § 502(c)(3), 29 U.S.C. § 1132(c)(3), as provided in 29 C.F.R. § 2575.502c-3, provides that an administrator of a defined benefit pension plan who fails to provide a Pension Benefit Statement at least once every three years to a participant with a non-

forfeitable accrued benefit who is employed by the employer maintaining the plan at the time the statement is to be furnished as required by ERISA § 105(a), 29 U.S.C. § 1025(a), may be liable for up to $110 per day from the date of such failure.

282.     As Defendant Franciscan Alliance, the employer, has failed to give the notices required by ERISA § 101(d), 29 U.S.C. § 1021(d), as set forth in Count V Subpart 4, Defendant Franciscan Alliance is liable to Plaintiffs and each member of the Class in an amount up to $110 per day from the date of such failures until such time that notices are given and the statement is provided, as the Court, in its discretion, may order.

283.     As the Retirement Committee, as Plan Administrator of the Plan, has failed to give the notices required by ERISA § 101(f), 29 U.S.C. § 1021 (f), and the Pension Benefit Statement required by ERISA § 105(a), 29 U.S.C. § 1025(a), as set forth in Count V Subparts 5 through 6, the Retirement Committee and the Retirement Committee Member Defendants are liable to the Plaintiffs and each member of the Class in an amount up to $110 per day from the date of such failures until such time that notices are given and the statement is provided, as the Court, in its discretion, may order.

## COUNT XI

### (Claim for Breach of Fiduciary Duty Against All Defendants)

284.     Plaintiffs incorporate and re-allege by reference the foregoing paragraphs as if fully set forth herein.

285.     Plaintiffs bring this Count XI for breach of fiduciary duty pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2).

### 1.     Breach of the Duty of Prudence and Loyalty

286.     This sub-Count alleges fiduciary breach against all Defendants.

287.     ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), provides in pertinent part that a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and –

(a)     for the exclusive purpose of:

(i)     providing benefits to participants and beneficiaries; and

(ii)     defraying reasonable expenses of administering the plan;

(b)     with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . . [and]

(c)     in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this [title I of ERISA] and title IV.

288.     As fiduciaries with respect to the Plan, Defendants had the authority to enforce each provision of ERISA alleged to have been violated in the foregoing paragraphs pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).  Having the authority to enforce the provisions of ERISA at those respective times, ERISA §§ 404(a)(1)(A)-(D), 29 U.S.C. §§ 1104(a)(1)(A)-(D), imposed on Defendants the respective duty to enforce those provisions in the interest of the participants and beneficiaries of the Plan during the times that each was a fiduciary of the Plan.

289.     Defendants have never enforced any of the provisions of ERISA set forth in Counts I-X with respect to the Plan.

290.     By failing to enforce the provisions of ERISA set forth in Counts I-X, Defendants breached the fiduciary duties that they owed to Plaintiffs and the Class.

291.    The failure of Defendants to enforce the funding obligations owed to the Plan has

resulted in a loss to the Plan equal to the foregone funding and earnings thereon, and profited

Defendant Franciscan Alliance by providing it the use of the money owed to the Plan for its

general business purposes.

## 2.    Prohibited Transactions

292.    This sub-Count alleges violations on behalf of all Defendants.

293.    ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), prohibits a fiduciary with

respect to a plan from directly or indirectly causing a plan to extend credit to a party in interest,

as defined in ERISA § 3(14), 29 U.S.C. § 1002(14), if he or she knows or should know that such

transaction constitutes an extension of credit to a party in interest.

294.    ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), prohibits a fiduciary with

respect to a plan from directly or indirectly causing a plan to use assets for the benefit of a party

in interest if he or she knows or should know that such transaction constitutes a use of plan assets

for the benefit of a party in interest.

295.    ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), prohibits the use of plan assets by a

fiduciary with respect to a plan for his or her own interest or for his or her own account.

296.    As fiduciaries with respect to the Plan and, with respect to Franciscan Alliance, as

an employer of employees covered by the Plan, the Defendants at all relevant times were parties

in interest with respect to the Plan pursuant to ERISA §§ 3(14)(A) and (C), 29 U.S.C.

§§ 1002(14)(A) and (C).

297.    By failing to enforce the funding obligations created by ERISA and owed to the

Plan, Defendants extended credit from the Plan to Franciscan Alliance in violation of ERISA

§ 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), when Defendants knew or should have known that their failure to enforce the funding obligation constituted such an extension of credit.

298. By failing to enforce the funding obligations created by ERISA and owed to the Plan, Defendants used Plan assets for Franciscan Alliance's own benefit, when Defendants knew or should have known that their failure to enforce the funding obligations constituted such a use of Plan assets, in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

299. By failing to enforce the funding obligations created by ERISA and owed to the Plan, Defendants used Plan assets in Franciscan Alliance's interest in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1).

300. The failure of Defendants to enforce the funding obligations owed to the Plan has resulted in a loss to the Plan equal to the foregone funding and earnings thereon.

301. The failure of Defendants to enforce the funding obligations owed to the Plan has profited Defendant Franciscan Alliance by providing it the use of money owed to the Plan for its general business purposes.

### 3. Failure to Monitor Fiduciaries

302. This sub-Count alleges fiduciary breach against Defendant Franciscan Alliance and each of the members of the Board of Trustees.

303. As alleged above, during the Class Period, Defendant Franciscan Alliance was a named fiduciary pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), or a *de facto* fiduciary within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), or both. Thus, it was bound by the duties of loyalty, exclusive purpose, and prudence.

304. The scope of the fiduciary responsibilities of Franciscan Alliance included the responsibility to appoint, and remove, and thus, monitor the performance of other fiduciaries.

305. As alleged above, during the Class Period, the members of the Board of Trustees were *de facto* fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) based on the fact that the Plan terms vested the Board with the power to remove and appoint members of the Retirement Committee. Thus, the members of the Board of Trustees were bound by the duties of loyalty, exclusive purpose, and prudence.

306. Under ERISA, a monitoring fiduciary must ensure that the monitored fiduciaries perform their fiduciary obligations, including those with respect to management and/or administration of the Plan, and must take prompt and effective action to protect the plan and participants when the fiduciaries they appointed are not complying with ERISA.

307. The monitoring duty further requires that appointing fiduciaries have procedures in place so that they may review and evaluate, on an ongoing basis, whether the "hands-on" fiduciaries are doing an adequate job (for example, by requiring periodic reports on their work and the plan's performance, and by ensuring that they have a prudent process for obtaining the information and resources they need). In the absence of a sensible process for monitoring their appointees, the appointing fiduciaries would have no basis for prudently concluding that their appointees were faithfully and effectively performing their obligations to plan participants or for deciding whether to retain or remove them.

308. Furthermore, a monitoring fiduciary must provide the monitored fiduciaries with the complete and accurate information in their possession that they know or reasonably should know that the monitored fiduciaries must have in order to prudently manage the plan and the plan assets, or that may have an extreme impact on the plan and the fiduciaries' investment decisions regarding the plan.

309.     Defendant Franciscan Alliance breached its fiduciary monitoring duties by, among other things:  (a) failing to appoint persons who would run the Plan as an ERISA plan; (b) failing to ensure that the monitored fiduciaries appreciated the true extent of not running the Plan as an ERISA plan; (c) to the extent any appointee lacked such information, failing to provide complete and accurate information to all of their appointees such that they could make sufficiently informed fiduciary decisions with respect to the Plan; and (d) failing to remove appointees whose performance was inadequate in that they continued to run the Plan as a non-ERISA plan, and who breached their fiduciary duties under ERISA.

310.     The Defendant members of the Board of Trustees breached their fiduciary monitoring duties by, among other things:  (a) failing to ensure that the Retirement Committee provided Summary Plan Descriptions, Annual Reports, Summary Annual Reports, Funding Notices, and Pension Benefit Statements to the 14,600 participants in the Plan for almost twenty years; (b) failing to ensure that the Retirement Committee did not follow plan terms that conflicted with ERISA's requirements thereby causing Plan participants to suffer significant unlawful reductions in benefits; (c) failing to ensure that the Retirement Committee fiduciaries understood the ramifications of failing to run the Plan as an ERISA plan; (d) failing to remove Retirement Committee members whose performance was inadequate in that they continued to run the Plan as a non-ERISA plan, and who breached their fiduciary duties under ERISA.

311.     The failure of all the Defendants to enforce the funding obligations owed to the Plan has resulted in a loss to the Plan equal to the foregone funding and earnings thereon, and profited Defendant Franciscan Alliance by providing it the use of money owed to the Plan for its general business purposes.

#### 4. Co-Fiduciary Liability

312. This sub-Count alleges co-fiduciary liability against all Defendants.

313. As alleged above, all Defendants were named fiduciaries pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), or *de facto* fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), or both. Thus, they were bound by the duties of loyalty, exclusive purpose, and prudence.

314. ERISA § 405(a), 29 U.S.C. § 1105, imposes liability on a fiduciary, in addition to any liability which he may have under any other provision, for a breach of fiduciary responsibility of another fiduciary with respect to the same plan if he knows of a breach and fails to remedy it, knowingly participates in a breach, or enables a breach. Defendants breached all three provisions.

315. **Knowledge of a Breach and Failure to Remedy**. ERISA § 405(a)(3), 29 U.S.C. § 1105, imposes co-fiduciary liability on a fiduciary for a fiduciary breach by another fiduciary if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach. Each of the Defendants knew of the breaches by the other fiduciaries and made no efforts, much less reasonable ones, to remedy those breaches.

316. Because Defendants knew that the Plan was not being run as an ERISA plan, Defendants knew that the other Defendants were breaching their duties by not complying with ERISA. Yet, they failed to undertake any effort to remedy these breaches.

317. **Knowing Participation in a Breach**. ERISA § 405(a)(1), 29 U.S.C. § 1105(1), imposes liability on a fiduciary for a breach of fiduciary responsibility by another fiduciary with respect to the same plan if he knowingly participates in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach. Franciscan

Alliance knowingly participated in the fiduciary breaches of the other Defendants in that it benefited from the Plan not being run as an ERISA plan.

318. **Enabling a Breach**. ERISA § 405(a)(2), 29 U.S.C. § 1105(2), imposes liability on a fiduciary if, by failing to comply with ERISA § 404(a)(1), 29 U.S.C. §1104(a)(1), in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled another fiduciary to commit a breach.

319. The failure of Defendant Franciscan Alliance and the members of the Board of Trustees to monitor the Retirement Committee enabled that committee to breach its duties.

320. As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan is currently underfunded, meaning that the Plan does not have sufficient assets to pay all accrued benefits it has promised to its participants and beneficiaries and is legally obligated to pay under ERISA.

321. The failure of Defendants to enforce the funding obligations owed to the Plan has resulted in a loss to the Plan equal to the foregone funding and earnings thereon, and profited Defendant Franciscan Alliance by providing it the use of money owed to the Plan for its general business purposes.

## COUNT XII

**(Claim for Declaratory Relief That the Church Plan Exemption Violates the Establishment Clause of the First Amendment of the Constitution, and Is Therefore Void and Ineffective)**

322. Plaintiffs incorporate and re-allege by reference the foregoing paragraphs as if fully set forth herein.

323. The ERISA Church Plan exemption is an accommodation that exempts churches and associations of churches, under certain circumstances, from compliance with ERISA.

324.     The ERISA Church Plan exemption, as claimed by Franciscan Alliance, is an attempt to extend the accommodation beyond churches and associations of churches, to Franciscan Alliance—a non-profit hospital conglomerate that has chosen to compete with commercial businesses, including other non-profits as well as for-profits, by entering the economic arena and trafficking in the marketplace.  Extension of the Church Plan exemption to Franciscan Alliance violates the Establishment Clause because it (A) is not necessary to further the stated purposes of the exemption, (B) harms Franciscan Alliance workers, (C) puts Franciscan Alliance competitors at an economic disadvantage, (D) relieves Franciscan Alliance of no genuine religious burden created by ERISA, and (E) creates more government entanglement with alleged religious beliefs than compliance with ERISA creates.

A.     <u>Not Necessary to Further Stated Purpose</u>. Congress enacted the Church Plan exemption to avoid "examination of books and records . . . an unjustified invasion of the confidential relationship with regard to churches and their religious activities."[6] This purpose has no application to Franciscan Alliance, which is neither run by nor intimately connected to any church financially. And, unlike a church, Franciscan Alliance has *no confidential books and records* to shield from government scrutiny. Franciscan Alliance already purports to disclose all material financial records and relationships when it seeks Medicare and Medicaid reimbursements and issues tax exempt bonds.

B.     <u>Harms Workers</u>.  Employers, including Franciscan Alliance, are not legally required to provide pensions; instead, they choose to provide pensions in order to reap tax rewards and attract and retain employees in a competitive labor market. Franciscan Alliance tells prospective employees that any choice of faith, or lack thereof,

---

[6]     S. Rep. No. 93-383 (1972), *reprinted in* 1974 U.S.C.C.A.N. 4889, 4965.

is not a factor in the recruiting and hiring of Franciscan Alliance employees. Thus, as a practical matter, and by Franciscan Alliance's own design, its pension plan participants include people of a vast number of divergent faiths, as well as those who belong to no faith. In choosing to recruit and hire from the public at large, Franciscan Alliance must be willing to accept neutral regulations, such as ERISA, imposed to protect those employees' legitimate interests. To be constitutional, an accommodation such as the Church Plan exemption must not impose burdens on non-adherents without due consideration of their interests. The Church Plan exemption, as claimed by Franciscan Alliance, places its tens of thousands of longtime employees' justified reliance on their pension benefits at great risk, including because the Plan is uninsured and underfunded. In addition, Franciscan Alliance fails to provide the multitude of other ERISA protections designed to safeguard its employees' pensions. The Church Plan exemption, as claimed by Franciscan Alliance, provides no consideration of the harm that it causes to Franciscan Alliance's employees.

      C.     <u>Puts Franciscan Alliance's Competitors at an Economic Disadvantage</u>.

Franciscan Alliance's commercial rivals face material disadvantages in their competition with Franciscan Alliance because the rivals must use their current assets to fully fund, insure (through premiums to the PBGC), and administer their pension plans, as well as providing other ERISA protections. In claiming that the Plan is an exempt Church Plan, Franciscan Alliance enjoys a material competitive advantage because it is able to divert significant cash, which otherwise would be required to fund, insure (through premiums to the PBGC), and administer the Plan, to its competitive growth strategy. To be constitutional, an accommodation such as the Church Plan exemption must take adequate

account of harm to nonbeneficiaries. The Church Plan exemption, as applied by Franciscan Alliance, provides no consideration of the disadvantage it creates for Franciscan Alliance's competitors.

D.     Relieves No Genuine Religious Burden Imposed by ERISA.  An exemption exclusively for religion must alleviate a significant, *state-imposed* interference with religious exercise. The Church Plan exemption, as claimed by Franciscan Alliance, responds to no genuine burden created by ERISA on any of Franciscan Alliance's religious practices. ERISA is materially indistinguishable from the array of neutral Congressional enactments that do not significantly burden religious exercise when applied to commercial activities. Moreover, Franciscan Alliance maintains a separate ERISA-governed plan, which further evidences that ERISA creates no undue burden on any genuine religious practice of Franciscan Alliance.

E.     Creates Government Entanglement with Alleged Religious Beliefs. A Franciscan Alliance exemption requires courts and agencies to examine unilateral religious "convictions" of a non-church entity and determine if they are "shared" with a church, in the absence of any actual church responsible for the pensions. This *creates* entanglement between government and putative religious beliefs. ERISA compliance, on the other hand, requires *zero* entanglement with religion for Franciscan Alliance because ERISA is a neutral statute that regulates pension protections and Franciscan Alliance has no relevant confidential books, records or relationships. Thus, an extension of the Church Plan exemption to Franciscan Alliance produces state entanglement with alleged religious beliefs while compliance with ERISA creates no meaningful state entanglement with alleged religious beliefs.

325.    Plaintiffs seek a declaration by the Court that the Church Plan exemption, as claimed by Franciscan Alliance, is an unconstitutional accommodation under the Establishment Clause of the First Amendment, and is therefore void and ineffective.

## IX.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that judgment be entered against the Defendants on all claims and request that the Court award the following relief:

A.    Declaring that the Franciscan Alliance Pension Security Plan is an employee pension benefit plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2), is a defined benefit pension plan within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35), and is not a Church Plan within the definition of ERISA § 3(33), 29 U.S.C. § 1002(33).

B.    Declaring that Defendants violated ERISA § 204(g) by: (1) impermissibly reducing the interest rate used to calculate certain class members' benefits, which amounted to a cutback of benefits, and ordering Defendants to recalculate individuals benefits using a 7% interest rate and order Defendants to pay participants who had already taken benefits that used the 5.5% rate additional benefits (plus interest) in an amount equal to the differential between the amount they did receive and the amount they should have received had a 7% interest rate been applied, (2) reducing Group B Participant's accrued benefits, and (3) reducing the accrued benefits of participants who worked at least five years and terminated on or after January 1, 2014, by calculating their Average Monthly Earnings using the Participants' previous seven (7) years of Service instead of the participants' previous five (5) years of service.

C.    Ordering Franciscan Alliance to reform the Franciscan Alliance Pension Security Plan to bring it into compliance with ERISA and to have the Franciscan Alliance Pension Security Plan comply with ERISA, including as follows:

1. Revising the Plan documents to reflect that the Plan is a defined benefit plan regulated by ERISA.

2. Requiring Franciscan Alliance to fund the Plan in accordance with ERISA's funding requirements, disclose required information to the Plan participants and beneficiaries, and otherwise comply with all other reporting, vesting, and funding requirements of Parts 1, 2 and 3 of Title I of ERISA, 29 U.S.C. §§ 1021-31, 1051-61, 1081-85.

3. Reforming the Plan to comply with ERISA's vesting, accrual, and lump sum option requirements, and providing benefits in the form of a qualified joint and survivor annuity.

4. Requiring the adoption of instruments governing the Plan that comply with ERISA § 402, 29 U.S.C. § 1102.

5. Requiring Franciscan Alliance and the Retirement Committee to comply with ERISA reporting and disclosure requirements, including by filing Form 5500 reports, distributing ERISA-compliant Summary Plan Descriptions, Summary Annual Reports, and ERISA-compliant participant Benefit Statements, and providing Notice of the Plan's funding status and deficiencies.

6. Requiring Franciscan Alliance and the Retirement Committee to clarify participants' rights to benefits pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1102(a)(1)(B).

7. Requiring the establishment of a Trust in compliance with ERISA § 403, 29 U.S.C. § 1103.

D.      Requiring Franciscan Alliance, as a fiduciary of the Plan, to make the Franciscan Alliance Pension Security Plan whole for any losses and disgorge any Franciscan Alliance profits accumulated as a result of fiduciary breaches.

E.      Appointing an Independent Fiduciary to hold the Franciscan Alliance Pension Security Plan's assets in trust, to manage and administer the Franciscan Alliance Pension Security Plan and its assets, and to enforce the terms of ERISA.

F.      Requiring Franciscan Alliance to pay a civil money penalty of up to $110 per day to Plaintiffs and each Class member for each day it failed to inform Plaintiffs and each Class member of its failure to properly fund the Plan.

G.      Requiring the Retirement Committee, as the Plan Administrator, to pay a civil money penalty of up to $110 per day to Plaintiffs and each Class member for each day it failed to provide Plaintiffs and each Class member with a Funding Notice.

H.      Requiring the Retirement Committee, as the Plan Administrator, to pay a civil money penalty of up to $110 per day to Plaintiffs and each Class member for each day it failed to provide a benefit statement under ERISA § 105(a)(1)(B), 29 U.S.C. § 1025(a)(1)(B).

I.      Ordering declaratory and injunctive relief as necessary and appropriate, including enjoining the Defendants from further violating the duties, responsibilities, and obligations imposed on them by ERISA with respect to the Franciscan Alliance Pension Security Plan.

J.      Declaring, with respect to Count XII, that the Church Plan exemption, as claimed by Franciscan Alliance, is an unconstitutional accommodation under the Establishment Clause of the First Amendment, and is therefore void and ineffective.

K.      Awarding to Plaintiffs attorneys' fees and expenses as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine.

L.      Awarding to Plaintiffs taxable costs pursuant to ERISA § 502(g), 29 U.S.C.

§ 1132(g), 28 U.S.C. § 1920, and other applicable law.

M.      Awarding to Plaintiffs pre-judgment interest on any amounts awarded pursuant to

law.

N.      Awarding, declaring or otherwise providing Plaintiffs and the Class all relief

under ERISA § 502(a), 29 U.S.C. § 1132(a), or any other applicable law, that the Court deems

proper.

DATED: August 10, 2016      Respectfully submitted,

_____/s/ Carol V. Gilden_____

COHEN MILSTEIN SELLERS & TOLL, PLLC
Carol V. Gilden
Illinois Bar No.: 6185530
190 South LaSalle Street
Suite 1705
Chicago, IL 60603
Tel: (312) 357-0370 / Fax: (312) 357-0369
Email: cgilden@cohenmilstein.com

COHEN MILSTEIN SELLERS & TOLL, PLLC
Karen L. Handorf
Michelle C. Yau
Julie Goldsmith Reiser
Kira L. Hettinger
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C. 20005
Tel: (202) 408-4600 / Fax: (202) 408-4699
Email: khandorf@cohenmilstein.com
myau@cohenmilstein.com
jreiser@cohenmilstein.com
khettinger@cohenmilstein.com

KELLER ROHRBACK L.L.P.
Lynn Lincoln Sarko
Laura R. Gerber
1201 Third Avenue, Suite 3200

Seattle, WA 98101
Tel: (206) 623-1900 / Fax: (206) 623-3384
Email: lsarko@kellerrohrback.com
lgerber@kellerrohrback.com

KELLER ROHRBACK P.L.C.
Ron Kilgard
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Tel: (602) 248-0088 / Fax: (602) 248- 2822
Email: rkilgard@kellerrohrback.com

**Attorneys for Plaintiffs**

**CERTIFICATE OF SERVICE**

I hereby certify that on August 10, 2016, I electronically filed the foregoing document with the Clerk of the Court using the Court's ECF system, which in turn sent notice to all attorneys of record.

/s/ Kira L. Hettinger
Kira L. Hettinger